SECOND DIVISION
FILED: December 4, 2007

No. 1-04-2894

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | APPEAL FROM THE CIRCUIT COURT OF COOK COUNTY |
| Plaintiff-Appellee, | ) ) | No. 90 CR 1812 |
| v. | ) ) | |
| JAMES BANNISTER, | ) ) | THE HONORABLE JAMES SCHREIER, |
| Defendant-Appellant. | ) | JUDGE PRESIDING. |

JUSTICE HOFFMAN delivered the opinion of the court:

Following a jury trial in 1991, the defendant, James Bannister, was convicted of two counts of first degree murder and sentenced to natural life imprisonment. His convictions and sentence were affirmed on direct review. People v. Young, 263 Ill. App. 3d 627, 635 N.E.2d 473 (1994). He subsequently sought relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 et seq. (West 1992)), asserting, inter alia, actual innocence premised on newly discovered evidence of the recantation of trial testimony against him. The defendant's postconviction petition initially was dismissed without an evidentiary hearing on this question. On appeal, this court reversed and remanded for an evidentiary hearing on the recantation issue. See People v. Bannister, No. 1-97-2876 (1998) (unpublished order under Supreme Court Rule 23). Following the evidentiary hearing, the trial court granted the defendant's request for postconviction relief, vacated his convictions, and ordered a new trial. The defendant was retried in a bench trial in 2004 and again found guilty of two counts of first degree murder and sentenced to natural life in prison.

On appeal, the defendant challenges his convictions, asserting that (1) his retrial violated his right to be free from double jeopardy, (2) he was denied due process and deprived of a fair trial based

upon the plea agreement entered into between the prosecution and co-defendant Michael Johnson, (3) by entering into the plea agreement with Johnson, the State usurped the Governor's exclusive right to pardon or commute sentences, (4) the trial court erred in allowing the State to prosecute him under an indictment that allegedly had been obtained through the use of perjured testimony, (5) the trial court erred in permitting the State to call Deanda Wilson as a witness where Wilson's prior inconsistent testimony had been found to be untruthful, (6) he was deprived of due process and a fair trial by cumulative error, and (7) the State failed to prove his guilt beyond a reasonable doubt. For the following reasons, we affirm the defendant's conviction and sentence.

To resolve the issues raised on appeal, it is necessary to consider the facts and procedural history of the defendant's prior prosecution. The defendant was charged with the November 9, 1989, murders of Dan Williams and Thomas Kaufman in gang-related shootings near the Stateway Gardens housing complex. Also charged with the murders were co-defendants, James Young, Michael Meyers, Kevin Young, Thomas Carter, Eric Smith, and Michael Johnson. The defendants were tried jointly by a jury, with the exception of Michael Johnson, who was granted a severance and tried separately. The evidence presented at the consolidated trials of the defendant and other co-defendants is summarized as follows.

The shootings originated from the ground and first-floor porches of the building at 3517-3519 South Federal Street. The shooters chased Williams toward an Illinois Institute of Technology (IIT) research building across the street, where he stumbled to the ground. Both Williams and Kaufman, a security guard stationed inside the doors of the IIT building, were killed by the gunfire. The State presented evidence in support of its theory that Williams had been shot, in a case of mistaken identity,

2

to avenge the sexual assault of co-defendant Kevin Young's girlfriend by members of a rival street gang, one of whom was also named "Williams."

At the joint trial of the six co-defendants, the only direct evidence against the defendant was the testimony of Deanda Wilson, who was then 12 years old and a member of the Del Vikings street gang. Wilson testified that, on the night of the shooting, he was with Willie Sims on the first-floor porch of 3519 South Federal Street when he saw the defendant and the six co-defendants, all of whom were dressed in black, approach the building. The seven individuals were all members of the Gangster Disciples street gang, a rival of the Del Vikings gang.

According to Wilson, the defendant and co-defendant Eric Smith arrived at the building first and waited near a janitor's closet under the building, at one point passing within 10 feet of him. Wilson and Sims then went to the second-floor porch where Wilson saw three co-defendants standing below him in front of the building and two co-defendants standing on the first-floor porch of a connected building. Williams was near a play lot in front of the building when someone called out to him. Following a verbal exchange, all seven men, including the defendant, stepped out from their positions and fired at Williams, who stumbled toward the IIT building and fell between its doors. Wilson was cross-examined regarding certain alleged inconsistencies in his testimony, such as whether the shooters were wearing masks over their faces and whether he could actually see the defendant and Smith from his vantage point.

Several other witnesses corroborated certain aspects of Wilson's testimony, including his version of how Williams was chased and shot by several men before he fell near the doors of the IIT building and Wilson's description of the shooters' dark clothing and the manner in which they left the

No. 1-04-2894

scene. In addition, Denise Brady and Ruth Wilson, Deanda's mother, corroborated Wilson's identification of co-defendants Kevin Young and Thomas Carter.

The defendant presented an alibi defense, calling four witnesses who testified that he was at home at the time of the shooting. At the conclusion of the trial, the jury found the defendant guilty of two counts of first degree murder, and he was sentenced to life imprisonment. The defendant's convictions and sentence were affirmed on direct appeal. Young, 263 Ill. App. 3d at 627.

In April 1993, the defendant filed a pro se petition for postconviction relief in which he requested a new trial, and a supplemental petition was filed by counsel in July 1995. The supplemental petition raised several issues, including actual innocence based on newly discovered evidence of Wilson's recantation of his trial testimony implicating the defendant. The postconviction petition was supported by the affidavit of Wilson, who attested that he was 15 years old and a member of the Gangster Disciples. In his affidavit, Wilson recanted his trial testimony in which he identified the defendant as one of the shooters he saw on November 9, 1989. Wilson also gave a court-reported statement in which he stated that he had seen seven people involved in the shooting but could positively identify only four. According to Wilson's statement, although he had identified seven shooters at the co-defendants' joint trial, he was not certain about the identity of three of those people, including the defendant. He did see two people standing under the building, as he had testified at trial, but he was unable to identify them because they were wearing masks. Wilson further attested that when he went to the police station, a detective showed him pictures of seven men, and those were the people he said were involved in the shooting. Wilson claimed that before he testified

4

at trial, he told both a detective and an assistant state's attorney that he was not certain about the identity of all seven of the shooters.

The court initially dismissed the petition without conducting an evidentiary hearing on the issue of Wilson's recantation. In so ruling, the court found that the recantation was unreliable and untrustworthy. The court particularly noted that, since trial, Wilson had switched allegiance to the Gangster Disciples, the street gang to which the defendant belonged. In denying the defendant's request for postconviction relief based on ineffective assistance of counsel, the trial judge remarked, "as I look back, I believe I would have found [the defendant] not guilty in a bench trial * * * [the] [j]ury thought otherwise * * * I don't think [defense counsel's decision not to call two witnesses] amounts to incompetence."

In denying the defendant's motion to reconsider the dismissal of his postconviction petition, the trial judge stated,

"I repeat this is a difficult situation for me because it's one of the few times in 20 years I ever disagreed with a jury's verdict on a particular defendant * * * had it been a bench trial[,] I would have found [the defendant] not guilty, given the identification and his alibi. But it was for the jury to decide. They could have reasonably found him guilty, * * * there is nothing under the law * * * that would require me to change the result brought about by the jury."

On appeal from the dismissal of the defendant's postconviction petition, this court reversed and remanded, holding that the circuit court should have conducted an evidentiary hearing on the question of Wilson's recantation of his trial testimony implicating the defendant.

5

On remand, the circuit court conducted an evidentiary hearing and found that, with respect to the defendant and co-defendant Smith, Wilson's trial testimony was not accurate and truthful and that there was no corroboration for his implication of the defendant and Smith in the shooting. The court concluded that, as to the defendant and co-defendant Smith, the outcome of the trial "would probably have been different if not for Wilson's perjured testimony." Accordingly, the court granted the defendant's postconviction petition requesting a new trial, vacated his convictions and sentence, set bond, and remanded the defendant to the custody of the Cook County Sheriff pending retrial. The defendant subsequently filed multiple discovery requests and demands for trial. The defendant was retried by the court after waiving his right to a jury.

In the second trial, the State presented the testimony of co-defendant Johnson, who had been tried separately, convicted of both murders, and sentenced to natural life imprisonment. Johnson acknowledged that he had consented to testify against the defendant as part of a plea agreement with the State. Under the terms of the plea agreement, Johnson promised to testify truthfully in exchange for the State's promise to move for vacatur of his two murder convictions and sentence, accept a guilty plea on one count of murder, nolle prosequi the other murder charge, and recommend that the court impose a sentence of 60 years' imprisonment on the single murder conviction. The plea agreement also provided that Johnson promised to testify in a manner that was consistent with his prior statements to police and to prosecutors, but the agreement would be rendered null and void if any of the representations contained in Johnson's prior statements, upon which the agreement was predicated, were found to be false. The agreement, which was signed by Johnson, his attorney, and two assistant state's attorneys, also provided that it was subject to the approval of the trial court

judge. In addition, Johnson testified that he had asked to be transferred from the super maximum security facility in which he had been incarcerated and that the State had promised to request a transfer to a different penitentiary, but Johnson understood that decision was completely within the discretion of the Illinois Department of Corrections.

Johnson further testified that in 1989, he had been a member of the Gangster Disciples street gang for approximately 10 years. On the evening of November 9, 1989, he was walking through the Stateway Gardens housing complex with James Young and Michael Meyers when they met the defendant, Eric Smith, Thomas Carter, and Kevin Young near the building at 3651 South Federal Street. All seven men went upstairs to apartment 309, which was the home of Tiya Young, Kevin Young's niece. There, they talked for about an hour, discussing a plan to shoot members of the Del Vikings street gang in revenge for the previous sexual assault of A.W., who was Kevin Young's girlfriend.

After this discussion, the group left the apartment and went to 3618 South Federal Street. At that time, all seven men were armed with guns. Johnson testified that he had a .25-caliber automatic, and the defendant had a .357-caliber revolver. When the group arrived at the second building, they encountered a man known as "Rick James," who greeted the defendant by his nickname. Kevin Young shot at "Rick James," and then all seven men ran to the building at 3547-3549 South Federal Street, where they waited for about 20 minutes before returning to Tiya Young's apartment. There, the group talked and smoked for 45 to 60 minutes.

After leaving Tiya Young's apartment, the group walked to 3617 South Federal Street and encountered Daniel Nicholson, who was in a wheelchair. Johnson stated he stood on the first-floor

porch with Carter and the defendant while Kevin Young, Smith, Meyers, and James Young followed Nicholson into the hallway. All seven men had their guns out while Kevin Young robbed Nicholson of some gold chains and other items. After robbing Nicholson, the group walked north to the building at 3547-3549 South Federal Street. Johnson testified that he then told the others that he was going upstairs to his apartment to get a ski mask and some "wave" caps, which are like scarves. After retrieving the ski mask and caps, he rejoined the others, gave caps to Kevin Young and Carter, and kept a ski mask for himself.

Thereafter, the seven men walked together to the building located at 3517-3519 South Federal Street. According to Johnson, he and Meyers walked to the side of the building near the back hallway. Smith, Kevin Young, and Carter stood in the breezeway behind an area referred to as the "mailbox." The defendant and James Young stood on the 3519 side of the building. Johnson stated that, at that time, he was wearing a ski mask, and Meyers was wearing a "wave" cap. As he and Meyers walked through the back hallway, they met Gregory Gordon, Willie Sims, and two women who were standing near the elevators. They also saw Denise Brady, Antoinette Barry, and Joe Johnson, who were coming out of the stairway.

Johnson testified that he then heard Smith say, "come here, mother***." After hearing gunshots, he walked with Meyers to the front of the building to see what was happening. Johnson stated that he saw Williams running while the defendant, Smith, Carter, Kevin Young, and James Young were firing their guns at him. Kevin Young stood behind the "mailbox," just inside the breezeway, with Smith and Carter. The defendant and James Young were on the ramp from the 3519 side of the building. The defendant, James Young, Kevin Young, Smith, and Carter stepped out from

8

underneath the building while shooting at Williams. Johnson testified that he shot at Williams as he ran to a play lot, jumped the fence, and ran toward the IIT building.

According to Johnson, when the shooting eventually stopped, he picked up a .25-caliber automatic shell casing from his gun and put it in his pocket. All seven of the shooters then went to an apartment in the building at 3547 South Federal Street and waited a few minutes until the police left the area. Johnson stated that he then went with Meyers, James Young, Kevin Young, Carter, and the defendant to an apartment in another building, but Smith drove away in a car. After about five minutes, the remaining members of the group left the apartment, and he went to the home of his aunt. About a week later, he sold the gun that he had used in the shooting.

Johnson's testimony was substantially consistent with the statement he gave the police on December 29, 1989, the day after his arrest. Johnson acknowledged that he initially denied any involvement in the shootings and, prior to his 1991 trial, he had moved to suppress his statement, asserting that he had not been advised of his constitutional rights before being questioned. At the retrial of the defendant, Johnson testified that the basis for his motion to suppress had been untrue because he had been advised of his rights prior to giving the statement. The defendant cross-examined Johnson as to the specific terms of the plea agreement and his motivation for entering into the agreement.

Daniel Nicholson testified that he had been confined to a wheelchair since 1981 and, on November 9, 1989, he was visiting his sister who lived in Stateway Gardens. Between 9 and 10 p.m., he left his sister's apartment and went to visit A.W. at 3617 South Federal Street. While waiting outside, he saw Kevin Young, Carter, James Young, Smith, Meyers, Johnson, and the defendant.

9

All seven men pulled guns, and Kevin Young and Meyers robbed him of three gold chains, a watch, and two diamond rings. Afterward, Smith told him to just roll down the ramp and not look back. Nicholson stated that, as he was leaving, he saw Williams and told him that he had just been robbed and that Williams should go to the front of the building. Despite his warning, Williams walked to the back of the building. As he was going up the ramp of his sister's building, he heard someone say, "[c]atch that mother***." Looking backward, he saw that Williams was running from several people who were chasing him. He also heard several gunshots and saw flashes of gunfire.

Gregory Gordon testified that in November of 1989, he lived in Stateway Gardens at 3517-3519 South Federal Street. Between 9 and 10 p.m. on November 9, 1989, he was with a person known as "Big Will." As the two men stood near the ground-floor elevators on the 3517 side of the building, they saw seven men, all of whom were dressed in dark clothing, walk into the hallway of the building. Some of the men had bandanas or scarves over their faces. Gordon stated that he recognized Meyers, Johnson, Carter, Smith, and Kevin Young, all of whom were holding guns in their hands. While he pressed the elevator button, he heard someone say, "[c]ome here, mother***," and several gunshots. When the elevator doors opened, he got inside along with "Big Will," two girls, and another guy. In the elevator, he heard another volley of gunshots before he got off on the 10th floor. According to Gordon, he then walked to the edge of the porch and looked down, where he saw someone crawling on the ground near the IIT building. He then looked over the porch on the other side of the building and saw seven men walking in a line toward the building at 3547-3549 South Federal Street. Gordon testified that he subsequently viewed police photographs and identified Kevin Young, Smith, Carter, Meyers, and Johnson as five of the seven men he had seen on the night

10

of the shootings. He also identified photographs of the defendant and James Young as people he recognized from the neighborhood, but he was unable to state specifically that they were members of that group.

Gordon acknowledged that on August 29, 1990, he signed a statement exonerating Smith, but he explained that he was coerced into doing so. Gordon testified that he feared for his life and was forced to give that statement by Demetrius Jackson, who had a gun and whom he believed was a member of the Gangster Disciples.

The State also called Deanda Wilson, who was then serving a sentence for murder in a Minnesota prison. Wilson denied seeing the shootings of Williams and Kaufman at all. Wilson stated that he was at a completely different building and knew nothing of the murders until he heard gunshots. Wilson testified that he looked out of a window after the shooting was all over, and he did not see any of the shooters. The prosecution introduced Wilson's prior inconsistent statements made during his testimony at the defendant's first trial, Johnson's trial, and during the proceedings before the grand jury. Wilson admitted that he had previously testified that the defendant was present at the scene and shot at Williams, but stated that those statements were untrue.

As in his first trial, the defendant again presented an alibi defense and called several witnesses who testified that he was at home on the night of the shootings. Upon consideration of all of the evidence presented, the court found the defendant guilty on both counts of first degree murder. The defendant subsequently filed post-trial motions for a new trial and for acquittal and dismissal based on double-jeopardy violations. The court denied these motions and sentenced the defendant to natural life in prison. The defendant has appealed his convictions and sentence.

No. 1-04-2894

We initially address the defendant's argument that his retrial violated his constitutional guarantees against double jeopardy. The State responds that the defendant has forfeited this issue on review by failing to timely raise it in the trial court and by requesting that the court grant him a new trial following postconviction relief. The State also asserts that, even if this issue had been preserved for review, retrial of the defendant was proper. We agree with the State on both propositions.

The United States and Illinois constitutions provide that no person shall be twice put in jeopardy for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, sec. 10. The constitutional guarantee against double jeopardy forbids a second, or successive, trial for the purpose of affording the prosecution another opportunity to supply evidence it failed to muster in the first proceeding. People v. Olivera, 164 Ill. 2d 382, 393, 647 N.E.2d 926 (1995), citing Burks v. United States, 437 U.S. 1, 11, 98 S. Ct. 2141 (1978). Although the guarantee against double jeopardy precludes the State from retrying a defendant after a reviewing court has determined that the evidence introduced at trial was legally insufficient to convict, the double jeopardy clause does not preclude retrial of a defendant whose conviction has been set aside because of an error in the proceedings leading to the conviction. Olivera, 164 Ill. 2d at 393, citing People v. Mink, 141 Ill. 2d 163, 173-74, 565 N.E.2d 975 (1990). In addition, retrial is permitted even though evidence is insufficient to sustain a verdict once erroneously admitted evidence has been discounted, and, for purposes of double jeopardy, all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence. Olivera, 164 Ill. 2d at 393, citing Lockhart v. Nelson, 488 U.S. 33, 40, 109 S. Ct. 285 (1988); People v. Avery, 180 Ill. App. 3d 146, 157, 534 N.E.2d 1296 (1989).

12

No. 1-04-2894

It is firmly established that the constitutional right to not be twice put in jeopardy for the same offense is a personal privilege which may be forfeited. People v. Scales, 18 Ill.2d 283, 285, 164 N.E.2d 76 (1960); People v. Dieterman, 243 Ill. App. 3d 838, 843, 613 N.E.2d 298 (1993). Where a new trial is granted on the defendant's request, that is, in itself, not a bar to a second trial on the same or amended indictment. People v. Placek, 184 Ill. 2d 370, 377, 704 N.E.2d 393 (1998). The defendant cannot, by his own conduct, avoid the jeopardy on which he stands and then assert it as a bar to subsequent jeopardy. Placek, 184 Ill. 2d at 377. The right has been forfeited where the accused seeks and obtains a new trial, or where he does not raise the defense of former jeopardy before judgment in the trial court. Scales, 18 Ill. 2d at 285-86.

In this case, the defendant specifically requested a new trial in his postconviction petitions, and he did not object to the trial court's decision to set bond and hold him for retrial following the grant of postconviction relief. In fact, the record demonstrates that, after his first convictions were vacated, the defendant affirmatively demanded a new trial on more than one occasion. The defendant did not raise his double-jeopardy claim until he filed post-trial motions after the trial court had again entered judgments of conviction on retrial. Thus, he has, by his own conduct, forfeited the issue of double jeopardy on appeal. See Scales, 18 Ill.2d at 285-86.

The defendant seeks to avoid this result by relying on certain remarks made by the circuit court during the postconviction proceedings. He contends that these comments constituted a finding by the court that the prosecution had failed to present sufficient evidence at the defendant's first trial to support his conviction. We find this contention is refuted by the record.

13

In particular, the defendant refers to the dismissal of his postconviction petition where the court stated, "as I look back, I believe I would have found [the defendant] not guilty in a bench trial * * * [the] [j]ury thought otherwise * * * I don't think [defense counsel's decision not to call two witnesses] amounts to incompetence." Also, in denying the defendant's motion to reconsider the dismissal of his postconviction petition, the trial judge stated,

"I repeat this is a difficult situation for me because it's one of the few times in 20 years I ever disagreed with a jury's verdict on a particular defendant * * * had it been a bench trial[,] I would have found [the defendant] not guilty, given the identification and his alibi. But it was for the jury to decide. They could have reasonably found him guilty, * * * there is nothing under the law I feel that would require me to change the result brought about by the jury."

The defendant misconstrues the court's determination and relies on certain isolated remarks, taken out of context, to support his argument that the court found a lack of sufficient evidence to convict at the first trial. Yet, it is clear that the court's comments, considered in their entirety, reflect the opposite conclusion. The trial judge specifically found that, although he might have found the defendant not guilty, the jury thought otherwise, and the determination of the defendant's guilt was for the jury to decide. In addition, the court found that the jury could have reasonably found the defendant guilty and that there was nothing under the law that would compel a different result. The trial court's remarks demonstrate that the court did not make a factual determination that the prosecution had presented insufficient evidence to support the defendant's guilt at the first trial.

14

No. 1-04-2894

Here, postconviction relief was granted based on Wilson's recantation of his previous testimony and not based on a lack of sufficient evidence to convict. Therefore, retrial was proper, and all the evidence submitted at the original trial may be considered when determining the sufficiency of the evidence. See Olivera, 164 Ill. 2d at 393, citing Lockhart, 488 U.S. at 40; Avery, 180 Ill. App. 3d at 157. Upon consideration of the evidence adduced at the first trial, including the testimony of Wilson, we agree with the trial court's determination that the prosecution had presented sufficient evidence to support defendant's convictions. Accordingly, the defendant's second prosecution did not violate his right to be free from double jeopardy.

We next consider the defendant's contention that he was deprived of due process and a fair trial based upon the plea agreement entered into between the prosecution and Johnson. In support of this argument, the defendant relies upon the fact that the plea agreement provided that Johnson would testify consistently with his prior statements to police and prosecutors. Whether a defendant's constitutional rights are violated by a consistency provision in a witness' plea agreement is an issue of first impression in Illinois. However, other states have considered the question and held that consistency provisions are permissible where they are accompanied by terms that require the witness' testimony to be truthful. We find the reasoning of these cases to be instructive here.

In State v. Bolden, 979 S.W.2d 587 (1998), the defendant and a co-defendant were charged with first degree murder. Bolden, 979 S.W.2d at 589. The co-defendant testified against the defendant pursuant to a plea agreement requiring that he testify truthfully as to the defendant's involvement in the murder, in accordance with a prior statement he had given to a law enforcement officer. Bolden, 979 S.W.2d at 589. The defendant appealed his conviction, arguing that he had been

15

denied his right to due process and a fair trial because the co-defendant's plea agreement required him to testify to specific facts. Bolden, 979 S.W.2d at 590.

The Supreme Court of Tennessee held that particular testimony of a witness as a condition of a plea agreement is not a violation of due process so long as the testimony is required to be truthful. Bolden, 979 S.W.2d at 591-92, citing State v. Burchett, 224 Neb. 444, 399 N.W.2d 258, 266-67 (1986); State v. Clark, 48 Wash. App. 850, 743 P.2d 822, 828-29 (1987); Sheriff, Humboldt County v. Acuna, 107 Nev. 664, 819 P.2d 197, 200-01 (1991). The court observed that " 'it is only where the prosecution has bargained for false or specific testimony, or a specific result, that an accomplice's testimony is so tainted as to require ... preclusion.' " Bolden, 979 S.W.2d at 591, quoting Burchett, 224 Neb. at 456, 399 N.W.2d at 266-67. The court distinguished on their facts cases in which the plea agreement required only that the witness testify in a particular fashion or that the testimony produce a specific result, without regard to the truthfulness of the testimony. Bolden, 979 S.W.2d at 592 n.3, citing People v. Medina, 41 Cal. App. 3d 438, 455, 116 Cal. Rptr. 133, 141 (1974); People v. Green, 102 Cal. App. 2d 831, 832-39, 228 P.2d 867, 868-72 (1951).

The Bolden court noted that because the plea agreement specifically required the co-defendant to testify truthfully, that condition "necessarily engulfed" the other terms in the agreement, which was "hinged upon truthful testimony." Bolden, 979 S.W.2d at 592. The court held that the co-defendant's testimony did not violate the defendant's rights to due process and a fair trial even though it had been induced by a plea agreement that required truthfulness and consistency with a prior statement. Bolden, 979 S.W.2d at 593.

The Court of Appeals of Michigan reached the same result in People v. Jones, 236 Mich. App. 396, 600 N.W.2d 652 (1999), where it upheld immunity agreements that provided that the witnesses had previously given truthful statements to police concerning the murder with which the defendant was charged and would testify truthfully at trial. Jones, 236 Mich. App. at 406-08, 600 N.W.2d at 656-57. The court observed that although the immunity agreements may provide some incentive for the witnesses to conform their trial testimony to their prior accounts of the incident, they did not violate the defendant's rights where the prosecution expressly conditioned its grants of immunity on the promises that the witnesses would provide truthful testimony. Jones, 236 Mich. App. at 406, 600 N.W.2d at 657. The Jones court concluded that when a prosecutor makes the decision to bargain with a witness on the basis of representations made by the witness during negotiations with the State, it is reasonable for the prosecutor to rely on the witness' assertion that such representations are truthful and to expect that the witness' trial testimony would be essentially consistent with the original information upon which the State's promise of leniency was induced. Jones, 236 Mich. App. at 407, 600 N.W.2d at 657, citing Acuna, 107 Nev. at 668, 819 P.2d at 199. In Arizona v. Rivera, 210 Ariz. 188, 109 P.3d 83 (2005), two accomplices testified against the defendant pursuant to separate plea agreements providing that each accomplice avowed that the information she had provided during a pretrial interview with prosecutors was a complete, accurate, and truthful account of the events surrounding the murder. Rivera, 210 Ariz. at 189, 109 P.3d at 84. In addition, each plea agreement provided that the accomplice understood and acknowledged that the State had entered into the plea agreement based on that avowal, and that the accomplice promised that she would testify truthfully at the defendant's trial. Rivera, 210 Ariz. at 189, 109 P.3d at 84. The Supreme Court of Arizona

17

concluded that the defendant's rights were adequately protected because the plea agreements did not compel the accomplices to disregard their oaths of truthfulness or bind them to a particular script or result. Rivera, 210 Ariz. at 191-92, 109 P.3d at 86-87. In so holding, the Rivera court found that State v. Fisher, 176 Ariz. 69, 73, 859 P.2d 179, 183 (1993) was factually distinguishable because the plea agreement in that case required only that the witness testify in a manner that was consistent with a prior statement regardless of the truth of that statement. Rivera, 210 Ariz. at 192, 109 P.3d at 87, citing Fisher, 176 Ariz. at 73, 859 P.2d at 183.

Here, the plea agreement repeatedly and explicitly obligated Johnson to testify truthfully. The agreement also provided that Johnson would testify in a manner that was consistent with his prior statements to police and to prosecutors, but if any of the representations contained in his prior statements were found to be false, the agreement would be rendered null and void. Thus, truthfulness was the overriding requirement of the agreement, and any falsehoods in Johnson's prior statements would nullify the accord. The agreement neither compelled Johnson to disregard his oath of truthfulness nor bound him to a particular script or result. By its terms, the requirement of truthfulness "necessarily engulfed" the other provisions in the agreement, which was "hinged upon [Johnson's] truthful testimony." See Bolden, 979 S.W.2d at 592. Accordingly, we find that Johnson's testimony was not tainted by the plea agreement, and the admission of his testimony, induced by the plea agreement, did not violate the defendant's rights to due process and a fair trial.

In addition, the defendant claims that he was denied due process where the trial judge participated in Johnson's plea agreement and failed to recuse himself from presiding over the defendant's second trial. We find that this contention is not supported by the record. Contrary to

18

the defendant's assertion, the trial judge did not sign and was not a party to Johnson's plea agreement. In addition, the court did not approve Johnson's plea agreement until more than a month after the defendant's second trial had concluded and he had again been found guilty. In light of these facts, we find that the defendant's claim that the trial judge committed reversible error by failing to recuse himself is unfounded.

We also reject the defendant's assertion that the State's plea agreement with Johnson "usurped the sole right to pardon or commute sentences allocated to the Governor of Illinois." Initially, we observe that the defendant lacks standing to challenge the validity and enforceability of Johnson's plea agreement because he was not a party to it.

It is established that fully negotiated plea agreements, though part of the criminal justice structure, are generally governed by contract law principles. People v. Evans, 174 Ill. 2d 320, 332, 673 N.E.2d 244 (1996); People v. Malin, 359 Ill. App. 3d 257, 262, 833 N.E.2d 440 (2005). Under contract law, there is a strong presumption against creating contractual rights in third parties, and this presumption can only be overcome by a showing that the language and circumstances of the contract manifest an affirmative intent by the parties to benefit the third party. Estate of Willis v. Kiferbaum Construction Corp., 357 Ill. App. 3d 1002, 1007, 830 N.E.2d 636 (2005), citing Bates & Rogers Construction Corp. v. Greely & Hansen, 109 Ill. 2d 225 (1986). Here, the defendant was not a beneficiary of the plea agreement between Johnson and the State. As a result, he has no standing to contest the validity or enforcement of Johnson's plea agreement.

Moreover, even if the defendant had standing to assert this claim, it is clear that the plea agreement entered into between Johnson and the State was neither a pardon nor a commutation of

19

sentence. A pardon is an executive action that officially nullifies punishment or other legal consequences of a crime. Black's Law Dictionary 1137 (7th ed. 1999). A commutation of a sentence is the executive's substitution of a punishment that is less severe than that originally imposed on a criminal defendant. Black's Law Dictionary 274 (7th ed. 1999). Neither of these situations requires the convicted defendant to undertake any promise or obligation in order to receive the benefit. By contrast, the agreement between Johnson and the State was a negotiated accord that obligated both the prosecution and Johnson to take certain actions in order to satisfy its terms.

The supreme court has recognized that "[t]here is no question that 'the disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice.' " People v. Henderson, 211 Ill. 2d 90, 102, 809 N.E.2d 1224, (2004), quoting Santobello v. New York, 404 U.S. 257, 260, 92 S. Ct. 495, 498 (1971). In addition, the court has held that "the plea-bargaining process, and the negotiated plea agreements that result from that process, are 'vital to and highly desirable for our criminal justice system.' " Henderson, 211 Ill. 2d at 102-03, quoting People v. Evans, 174 Ill. 2d 320, 325, 673 N.E.2d 244 (1996).

In this case, the plea agreement required Johnson to testify truthfully against the defendant, withdraw all of his appeals and postconviction petitions, and forever waive any and all future appeals, postconviction petitions or motions to vacate pleas. The record demonstrates that Johnson had an amended supplemental postconviction petition pending in January 2004, and he moved to voluntarily dismiss his postconviction appeal in accordance with the terms of the plea agreement. In exchange for Johnson's truthful testimony and his promise to forego future appeals and postconviction

petitions, the State promised to move to vacate Johnson's existing sentence, accept his guilty plea on one count of first degree murder, move to <u>nolle</u> <u>prosequi</u> the other murder charge, and to recommend that Johnson receive a sentence of 60 years in prison, which was the maximum sentence for first degree murder. These mutual obligations demonstrate that the plea agreement between Johnson and the State cannot be construed as a pardon or a commutation of sentence.

Our analysis is not altered by the fact that Johnson had already been tried and convicted. Illinois courts have consistently held that a defendant does not have an absolute right to have a guilty plea accepted by the circuit court, and the court may reject a plea in the exercise of sound judicial discretion. <u>Henderson</u>, 211 Ill. 2d at 103, citing <u>Santobello</u>, 404 U.S. at 262; <u>People v. Peterson</u>, 311 Ill. App. 3d 38, 45, 725 N.E.2d 1 (1999). Before a trial judge accepts any plea, the judge must first determine if the plea has a factual basis, which protects those accused of crime "by ensuring that they have not pleaded guilty by mistake or under a misapprehension, or been coerced or improperly advised to plead to crimes they did not commit." <u>People ex rel. Daley v. Suria</u>, 112 Ill. 2d 26, 32, 490 N.E.2d 1288 (1986). Here, the trial court found a factual basis for the guilty plea after having presided over Johnson's earlier trial and having heard Johnson's testimony at the defendant's retrial, which recounted his participation in the murder of Williams, and the court did not accept Johnson's guilty plea until more than a month after the defendant was found guilty on retrial. Also, as noted above, Johnson voluntarily dismissed a pending appeal on a postconviction petition pursuant to the plea agreement. Under these circumstances, we find that the plea agreement was valid and enforceable.

In addition, even if the plea agreement were found to be invalid, the only consequence would be that it could not have been enforced by either the State or Johnson. The defendant has cited no authority holding that a determination that the plea agreement was invalid would have required the suppression of Johnson's testimony. Rather, a finding that the agreement was void would mean that neither Johnson nor the State would have been obligated to fulfill their respective commitments under the agreement, and Johnson would still be legally convicted of two murders. See People v. Caban, 318 Ill. App. 3d 1082, 1087-89 (2001) (holding that, where the sentence stipulated in the plea agreement was not authorized by statute, the entire agreement was void, and the defendant's plea was properly vacated). For all of the reasons set forth above, we reject the defendant's assertion that Johnson's plea agreement was invalid.

The defendant next claims that it was improper to retry him on the original indictment because that indictment was based on perjured testimony by Wilson. In response, the State contends that the defendant has forfeited this issue on appeal. We agree.

To preserve an issue for review, a defendant must both object at trial and raise the issue in a written post-trial motion. People v. Bush, 214 Ill. 2d 318, 332, 827 N.E.2d 455 (2005); People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). Here, the defendant did not challenge the indictment prior to or during trial, nor did he raise it in his post-trial motion. Consequently, he has forfeited this claim on appeal. See Bush, 214 Ill. 2d at 332; Enoch, 122 Ill. 2d at 186.

Moreover, even if this issue had been preserved for review, the defendant has failed to present this court with an adequate record to support his assertion that the indictment against him was based solely on the grand jury testimony of Wilson. It is established that the appellant has the burden of

22

providing a sufficiently complete record on appeal so that the reviewing court is fully informed regarding the issues to be resolved. People v. Moore, 373 Ill. App. 3d 367, 376, 869 N.E.2d 177 (2007); People v. Raczkowski, 359 Ill. App. 3d 494, 496, 834 N.E.2d 596 (2005). Where the issue on appeal relates to the conduct of a proceeding, the issue is not subject to review absent a report or record of the proceeding. Webster v. Hartman, 195 Ill. 2d 426, 432, 749 N.E.2d 958 (2001); Raczkowski, 359 Ill. App. 3d at 496. Because the record before us does not include the entire report of proceedings before the grand jury, it is impossible for this court to ascertain whether the indictment against the defendant was based exclusively on Wilson's testimony.[1] Accordingly, we must presume that the trial court did not err in permitting the retrial of the defendant on the original indictment.

The defendant also argues that it was reversible error for the State to call Deanda Wilson as a witness. In particular, the defendant contends that he was denied due process and a fair trial because the court permitted the State to call Wilson despite the recantation of his testimony given at previous trials and before the grand jury. The State again argues that the defendant has forfeited this issue on appeal, and we must agree.

As stated above, in order to preserve an issue for review, a defendant must both object at trial and raise the issue in a written post-trial motion. Bush, 214 Ill. 2d at 332; Enoch, 122 Ill. 2d at 186. In this case, the defendant failed to object at trial to the introduction of Wilson's testimony and, therefore, has forfeited this issue on review. See Bush, 214 Ill. 2d at 332; Enoch, 122 Ill. 2d at 186.

---

[1] This court granted the defendant's motion to supplement the record on appeal to include the report of proceedings before the grand jury. Although the briefs indicate that Wilson testified before the grand jury, the supplemental record filed by the defendant contains only the testimony of Detective Winstead and does not include the testimony of Wilson or any other witnesses.

No. 1-04-2894

Despite this forfeiture, the defendant urges us to consider this issue under the plain-error rule, which permits review where the trial evidence was closely balanced or when the error is "so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." People v. Hall, 194 Ill. 2d 305, 335, 743 N.E.2d 521 (2000); 134 Ill.2d R. 615(a). The defendant asserts that plain error was established because the question of whether Wilson's trial testimony was perjured had been finally decided during the postconviction proceedings and had become the law of the case. We disagree.

The law of the case doctrine bars relitigation of an issue already decided in the same case. See People v. Tenner, 206 Ill. 2d 381, 395, 794 N.E.2d 238 (2002); People v. Patterson, 154 Ill. 2d 414, 468, 610 N.E.2d 16 (1992). The case before us is the defendant's direct appeal of his convictions following the second trial, which is a separate and distinct proceeding from that involving the defendant's post-conviction petition. See People v. Harris, 224 Ill. 2d 115, 127, 862 N.E.2d 960 (2007) (recognizing that a postconviction proceeding collaterally attacking a conviction is a case separate and apart from the case in which the conviction was entered). Because the defendant's direct appeal and the postconviction proceedings are not the same case, the doctrine of law of the case does not apply here. See Tenner, 206 Ill. 2d at 395-96. In addition, we observe that the defendant has not argued that either collateral estoppel or res judicata applied to the question of whether Wilson's testimony had been perjured, and we decline to address the issue since it was not raised on appeal. See 210 Ill. 2d R. 341(h)(7); People v. Colon, 225 Ill. 2d 125, 157, 866 N.E.2d 207 (2007).

24

No. 1-04-2894

Moreover, the merits of the defendant's argument have been rejected by People v. Craig, 334 Ill. App. 3d 426, 778 N.E.2d 192 (2002). As observed in Craig, section 115-10.1 of the Code of Criminal Procedure (725 ILCS 5/115-10.1 (West 2004)) specifically authorizes the admission of prior inconsistent statements as substantive evidence and dictates that the court did not err in permitting the State to call Wilson as a witness.

Section 115-10.1 provides, in relevant part, as follows:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement–

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

25

(c) the statement is proved to have been accurately recorded by a tape

recorder, videotape recording, or any other similar electronic means of sound

recording." 725 ILCS 5/115-10.1 (West 2004); see also Craig, 334 Ill. App.

3d at 441. Under this provision, prior inconsistent statements are admissible as substantive evidence as long as the statutory requirements have been met. See People v. Benford, 349 Ill. App. 3d 721, 730, 812 N.E.2d 714 (2004); People v. Kluppelberg, 257 Ill. App. 3d 516, 534, 628 N.E.2d 908 (1993).

In Craig, this court recognized that " 'a substantive policy reason for section 115-10.1 of the Code was to prevent a turncoat witness from backing away from a former statement made under circumstances indicating it was likely to be true by merely denying the statement.' " Craig, 334 Ill. App. 3d at 441-42, quoting People v. Fauber, 266 Ill. App. 3d 381, 390-91, 640 N.E.2d 689 (1994). The Craig court held that the defendant's due process rights were not violated by the State's introduction as substantive evidence the prior inconsistent statements of two witnesses who recanted their previous testimony at trial. Craig, 334 Ill. App. 3d at 441-42.

In this case, each term set forth in section 115-10.1 was satisfied by Wilson's testimony at the previous trials and during the grand jury proceedings. Consequently, the admission of Wilson's prior inconsistent statements as substantive evidence was proper, and we find no violation of the defendant's right to due process by its admission. See Craig, 334 Ill. App. 3d at 441-42.

The defendant next contends that his convictions must be reversed based on cumulative error. In support of this contention, he relies upon the plea agreement with Johnson, the admission of Wilson's prior inconsistent statements as substantive evidence, his retrial based on the original

indictment, and the fact that the State offered "incentives" for the testimony of Nicholson and Gordon. We have previously disposed of the first three assignments of error. Regarding the final allegation, we initially observe that the defendant has waived this issue on review by failing to raise it at trial. See Bush, 214 Ill. 2d at 332; Enoch, 122 Ill. 2d at 186. In addition, we find that the defendant was not denied due process where his counsel was able to cross-examine both Nicholson and Gordon regarding any inducements or benefits that had been offered by the prosecution in exchange for their testimony. Accordingly, we conclude that the defendant was not deprived of the right to a fair trial based on cumulative error. See People v. Caffey 205 Ill. 2d 52, 117-18, 792 N.E.2d 1163 (2001); People v. Hall, 194 Ill. 2d 305, 350-51, 743 N.E.2d 521 (2000).

Finally, we address the defendant's argument that his convictions should be reversed because the State failed to prove him guilty beyond a reasonable doubt. In challenging the evidentiary basis for his convictions, the defendant essentially disputes the credibility of the witnesses who testified against him. Specifically, he claims that his convictions should be reversed where the testimony given by Johnson, Nicholson, and Gordon was improbable and unconvincing because each of these witnesses had received substantial benefits from the State in exchange for their testimony. We disagree.

When a defendant challenges the sufficiency of the evidence, the appellate court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); People v. Cunningham, 212 Ill. 2d 274, 278, 818 N.E.2d 304 (2004). In such a case, it is not the role of the

reviewing court to retry the defendant. People v. Sutherland, 223 Ill. 2d 187, 242, 860 N.E.2d 178 (2006). A criminal conviction will not be set aside on the grounds of insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. People v. Brown, 169 Ill. 2d 132, 152, 661 N.E.2d 287 (1996). In reviewing the evidence we will not substitute our judgment for that of the trier of fact. Sutherland, 223 Ill. 2d at 242; People v. Collins, 214 Ill. 2d 206, 217, 824 N.E.2d 262 (2005). The determination of the weight to be given the witnesses' testimony, their credibility, resolution of inconsistencies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact. Sutherland, 223 Ill. 2d at 242.

The testimony of a single witness, is sufficient to convict if the testimony is positive and the witness is credible. People v. Smith, 185 Ill. 2d 532, 541, 708 N.E.2d 365 (1999). Where the finding of the defendant's guilt depends on eyewitness testimony, a reviewing court must decide whether a fact finder could reasonably accept the testimony as true beyond a reasonable doubt. Cunningham, 212 Ill. 2d at 279. Under this standard, the eyewitness testimony may be found insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." Cunningham, 212 Ill. 2d at 280. Although "the testimony of an accomplice witness has inherent weaknesses and should be accepted only with caution and suspicion," such testimony, "whether corroborated or uncorroborated, is sufficient to sustain a criminal conviction if it convinces the [trier of fact] of the defendant's guilt beyond a reasonable doubt." People v. Tenney, 205 Ill. 2d 411, 429, 793 N.E.2d 571 (2002), citing People v. Smith, 177 Ill. 2d 53, 74, 685 N.E.2d 880 (1997). Moreover, a conviction will not be reversed simply because the defendant claims that

28

No. 1-04-2894

a witness was not credible. <u>Smith</u>, 177 Ill. 2d at 74; <u>People v. Byron</u>, 164 Ill. 2d 279, 299, 647 N.E.2d 946 (1995).

In this case, the direct evidence against the defendant consisted primarily of the testimony of Johnson, who testified in detail regarding his own involvement and that of the defendant in the murders of Williams and Kaufman. Johnson explained the motivation behind the murder of Williams, who was believed to be a member of the Del Vikings street gang that was responsible for the previous sexual assault of Kevin Young's girlfriend. He also described the series of events that culminated in the two murders. He explicitly related the manner in which the seven co-defendants met on the evening of November 9, 1989, armed themselves with various weapons, traveled between several buildings in the housing complex, and robbed Nicholson before encountering Williams. Johnson testified that after Smith called out to Williams, all seven members of the group shot at him while he attempted to flee toward the IIT building. Both Williams and Kaufman were killed by these shots.

Johnson's testimony alone was sufficient to sustain the defendant's murder convictions. In addition, several aspects of his testimony were corroborated by the testimony of Nicholson and Gordon. In particular, Nicholson testified that the defendant was armed with a gun and was part of the group of men who robbed him shortly before the shootings occurred. Gordon's testimony corroborated Johnson's description of the events that occurred immediately before the shootings.

As stated earlier, it was the right and obligation of the trial judge to determine the weight and credibility to be given the witnesses' testimony, to resolve any inconsistencies and conflicts in the evidence, and to decide the reasonable inferences to be drawn from the testimony. <u>Sutherland</u>, 223 Ill. 2d at 242; <u>Tenney</u>, 205 Ill. 2d at 428. The court was well aware of the terms of Johnson's plea

29

agreement and, in accepting the plea, the court specifically found that Johnson's trial testimony was truthful. In addition, the court was informed of the benefits that both Nicholson and Gordon had received in exchange for their testimony. Also, as the finder of fact, the trial court was entitled to credit the testimony of the prosecution witnesses and to disregard the defendant's alibi evidence. See People v. Jimerson, 127 Ill. 2d 12, 46, 535 N.E.2d 889 (1989). In reviewing all of the evidence in accord with the standard set forth above, we find that a rational trier of fact could have found the defendant's guilt beyond a reasonable doubt. Accordingly, we reject the defendant's assertion that the State failed to prove him guilty beyond a reasonable doubt.

For the foregoing reasons, we affirm the defendant's convictions and sentence.

Affirmed.

HALL and KARNEZIS, J.J., concur.