PEOPLE v JONES

Docket No. 208249. Submitted February 3, 1999, at Detroit. Decided June
25, 1999, at 9:30 A.M. Leave to appeal sought.

Bennie Jones, III, was convicted by a jury in the Detroit Recorder's
Court, Clarice Jobes, J., of second-degree murder and possession of
a firearm during the commission of a felony. The defendant
appealed, claiming that the prosecution and the trial court violated
his due process rights by intimidating witnesses to testify untruth-
fully against him. The defendant contended that the prosecution
coerced the testimony of witnesses whom it granted use immunity
by conditioning the grant of immunity on testimony consistent with
prior statements made by the witnesses to the police. The defend-
ant contended that the trial court intimidated the witnesses by
appointing independent counsel for each immunized witness to
advise them about the implications of their immunity agreements in
place of the single attorney who theretofore had advised them and
shared office space with counsel for the defendant. The Court of
Appeals, MURPHY, P.J., and R. R. CASHEN, J. (O'CONNELL, J., dissenting
in part), in an unpublished opinion per curiam, issued November
17, 1995 (Docket No. 167946), rejected the defendant's claims and
affirmed his convictions. The Supreme Court, in lieu of granting
leave to appeal, vacated the Court of Appeals judgment and
ordered the Court of Appeals to remand the case to the trial court
for an evidentiary hearing regarding the defendant's allegation that
the witnesses altered their accounts of the murder incident. The
Supreme Court also directed the Court of Appeals to retain juris-
diction so that it could review the trial court's ruling at the eviden-
tiary hearing. 453 Mich 925 (1996). On remand, the trial court,
Michael F. Sapala, J., granted the defendant's motion for a new
trial, ruling that the testimony of the immunized witnesses was
tainted because the prosecution had improperly bargained for spe-
cific testimony by placing undue pressure on the witnesses to con-
form their trial testimony to their police statements, and that the
trial court exacerbated the problem by appointing independent
counsel for the witnesses. After the case was returned to the Court
of Appeals, the appeal was dismissed pursuant to a stipulation by
the parties. The prosecution sought leave to appeal in the Court of
Appeals from the trial court order granting a new trial. The Court

of Appeals denied leave. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 456 Mich 893 (1997).

The Court of Appeals *held*:

The trial court abused its discretion in granting the defendant's motion for a new trial inasmuch as the reasons given by the trial court in granting the motion do not provide a legally recognized basis for relief.

1. A grant of immunity, or other favorable treatment, may be conditioned on a promise that the witness will testify completely and truthfully, but the prosecution may not bargain with an accomplice for testimony conforming to a specific script or to a particular formulation of facts, without regard for the truth. In this case, the prosecution conditioned the grant of immunity on truthful testimony and on testimony consistent with police statements. Thus, the condition of consistent testimony was consistent with the search for the truth.

2. The Court of Appeals is not persuaded that the original trial judge's decision to appoint independent counsel to the immunized witnesses and her instructions to those counsel could have in any way amounted to intimidation of those witnesses.

Reversed and remanded for reinstatement of convictions and sentences.

1. CRIMINAL LAW — NEW TRIAL — APPEAL.

A trial court may grant a new trial to a defendant on the basis of any ground that would support reversal on appeal, or because it believes that the verdict has resulted in a miscarriage of justice; a trial court's decision to grant a new trial is reviewed on appeal for abuse of discretion; an abuse of discretion will be found if the reasons given by the trial court do not provide a legally recognized basis for relief (MCR 6.431[B]).

2. CRIMINAL LAW — WITNESSES — IMMUNITY FROM PROSECUTION.

A grant of immunity from prosecution to a witness at a criminal proceeding may be conditioned on a promise that the witness will testify completely and truthfully; a bargain for testimony consistent with the witness' prior statements to the police is a valid condition of immunity when the prior statements are consistent with other facts within the prosecution's knowledge of the case.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of

Research, Training, and Appeals, and *Janet A. Napp*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *David A. Moran*), for the defendant on appeal.

Before: TALBOT, P.J., and NEFF and SMOLENSKI, JJ.

TALBOT, P.J. This case is on remand from the Michigan Supreme Court for consideration as on leave granted. 456 Mich 893 (1997). The prosecution appeals from an order granting defendant's motion for a new trial on the ground that certain immunized witnesses had been improperly coerced by the actions of the prosecutor and the original trial judge. We reverse and remand with instructions to the trial court to reinstate defendant's convictions and sentences.

On May 30, 1992, Tyronne Hackett, a fourteen-year-old boy, was shot while in front of his grandmother's house. Eight days later he died as a result of his injuries. Defendant was convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), for his role in Hackett's death. The trial court sentenced defendant to consecutive terms of two years' imprisonment for the felony-firearm conviction and eight to fifteen years' imprisonment for the murder conviction. The prosecution's theory was that defendant shot Hackett with a shotgun from an automobile while Hackett was engaged in an altercation with Genmante Gaither in front of the house.

After the incident, Gaither was arrested and charged with first-degree murder. The police also arrested Kenneth McFarland, Charles Arrington,

Andre Arrington, and Charles Jones—four men present with defendant and Gaither at the time of the shooting. Gaither gave a statement to police implicating defendant as the shooter. Soon after that the other four men gave similar statements and were released without being charged with any crimes. Defendant was then arrested and charged with first-degree murder. At the first session of defendant's and Gaither's joint preliminary examination, McFarland, Andre Arrington, and Charles Jones asserted their Fifth Amendment rights against self-incrimination. Three days later they were granted "use" immunity.[1] The written immunity agreements provided as follows:

> IN THE MATTER OF [Witness], that if [Witness] provides a truthful statement to the Detroit Police Department concerning his knowledge of the killing of Tyrone [sic] Hackett and testifies truthfully in all trials, proceedings and hearings in connection with that killing the Wayne County Prosecutor's Office will not use [Witness'] testimony to 'bring charges against him.

While it would appear from the text of the immunity agreements that the witnesses agreed to give a truthful statement to the police *in the future*, that was not the agreement contemplated by the parties. It is undisputed that the police statements referred to in the immunity agreements were those given by the witnesses when they were first arrested.

---

[1] "Use" immunity protects a witness only from the prosecutorial use of compelled testimony. A witness granted "use" immunity may still be prosecuted for a crime in which he was involved and to which his immunized testimony relates. *People v McIntire*, 232 Mich App 71, 88; 591 NW2d 231 (1998).

McFarland and Andre Arrington testified at the second session of the joint preliminary examination. Although they described the incident in which the shot was fired at Hackett, they did not implicate defendant as the shooter. Accordingly, the district court granted defendant's motion to dismiss the charges against him. The charges against defendant were reinstated when Gaither agreed to plead guilty of assault with intent to do great bodily harm less than murder in exchange for his promise to "testify truthfully against [defendant] as the shooter of Tyronne Hackett in any and all proceedings." After another preliminary examination, at which Gaither testified that he saw defendant fire a shot at Hackett, defendant was bound over on a charge of first-degree murder. Defendant then moved to quash the information. Granting defendant's motion, in part, the circuit court reduced the charge to second-degree murder.

At the outset of defendant's trial, the prosecutor asked the trial court to appoint separate lawyers for each of the immunized witnesses for the purpose of advising them of their potential exposure. She was concerned that McFarland's and Andre Arrington's testimony at the preliminary examination did not satisfy their obligations under their immunity agreements. She was also concerned with the fact that the immunized witnesses were represented by a single attorney who shared office space with defense counsel. The trial court agreed that each immunized witness should be advised by independent counsel and appointed three lawyers for that purpose. On the following day, the trial court explained the purpose of the appointments:

> [The immunized witnesses] were to consult with the law-yers about two things, one the possible exposure they might have had in terms of immunity being withdrawn if they did not testify in the manner consistent with their orig-inal statement and two what might happen if it should ever develop that perjury was committed.

Each of the appointed attorneys then indicated on the record that their clients had been so advised and were prepared to adhere to the immunity agreements. Likewise, each of the immunized witnesses indicated satisfaction with their appointed attorneys.

The fourth witness at issue in this appeal, Charles Arrington, was granted "use" immunity immediately before his testimony at trial. All four witnesses testi-fied for the prosecution at defendant's trial. Consis-tent with their police statements, each of them testi-fied in a manner implicating defendant as the shooter. All four witnesses were also extensively cross-examined by defense counsel regarding the specific circumstances of their police statements and of their immunity agreements. In its charge to the jury, the trial court gave a general instruction concerning the evaluation of witnesses and then advised the jury to specifically consider how the immunity agreements might have affected the witnesses' credibility and tended to show bias.

In his first appeal to this Court, defendant argued that "the prosecutor and the trial court violated his due process rights by intimidating witnesses to testify untruthfully against him." See *People v Jones*, unpub-lished opinion per curiam of the Court of Appeals, issued November 17, 1995 (Docket No. 167946). While the majority concluded that defendant's due process rights were not violated, a dissenting judge opined

that the case should have been remanded for an evidentiary hearing pursuant to MCR 7.216(A)(5) in order to more fully develop defendant's allegations of the "witnesses altering their accounts" of the incident. In lieu of granting defendant's application for leave, the Supreme Court vacated the Court of Appeals judgment and ordered this Court to remand the case to the trial court "for an evidentiary hearing as proposed in the dissenting opinion in the Court of Appeals." *People v Jones*, 453 Mich 925 (1996). This Court, retaining jurisdiction, remanded the case for an evidentiary hearing.

The evidentiary hearing was held before a different judge on remand. At the hearing, McFarland, Charles Arrington, Andre Arrington, and Charles Jones asserted their Fifth Amendment rights against self-incrimination and did not testify. Linda Borus, the chief investigator for the State Appellate Defender's Office, testified that she had interviewed all four of the witnesses. According to Borus, the "gist" of their comments to her was that before defendant's trial they felt "intimidated" into testifying in accordance with their police statements. Following Borus' testimony, defendant's appellate counsel, David Moran, took the stand and testified similarly.[2] The only other witness to testify was Nancy Westveld, the prosecutor at defendant's trial. Although Westveld was not involved in the case when the first three immunity agreements were made, she testified that it was her understanding that the witnesses had agreed to testify

---

[2] The propriety of the testimony of Borus and Moran at the evidentiary hearing is not an issue before this Court. Although the prosecution made a half-hearted objection at the evidentiary hearing, it chose not to pursue the issue on appeal.

"consistent with their statements to the police." She also indicated that the police statements were consistent with the physical evidence and with what the prosecution "knew about the facts of the case." Finally, she explained that she had no reason to believe that the police statements had been untrue.

At the close of the hearing on remand, the court explained that defendant was entitled to a new trial because the actions of the prosecution and the original trial judge had deprived defendant of a fair trial. In particular, the court explained that the testimony of the four immunized witnesses was tainted because the prosecution had improperly bargained for "specific testimony." According to the court, by conditioning immunity on both (1) the witnesses' assurances that their police statements had been "truthful" and (2) their promises to testify "truthfully" at trial, the prosecution had placed "undue pressure" on the witnesses to conform their trial testimony to their police statements. In other words, the witnesses had been "boxed in." The court explained that this problem was exacerbated by the original trial judge's decision to appoint independent counsel for three of the immunized witnesses, and by the "comments and statements" made by the trial judge to the appointed attorneys.

After the case was returned to this Court, the prior panel. entered an order dismissing the appeal pursuant to a stipulation by the parties.[3] Three days after

---

[3] Defendant's first appeal was dismissed because he no longer sought relief from this Court, having been granted a new trial below. It is worth noting that the trial court was never instructed to consider defendant's motion for a new trial. It was asked only to supplement the record. Nevertheless, we are not now faced with the issue whether the trial court's action below exceeded the scope of the remand.

the appeal was dismissed, the prosecution sought leave to appeal from the trial court's order granting defendant's motion for a new trial. This Court denied leave and the prosecution sought leave to appeal to the Supreme Court. In lieu of granting leave to appeal, the Supreme Court remanded the case to this Court for consideration as on leave granted.

The prosecution now argues that the court erred in granting defendant's motion for a new trial. We agree. A trial court may grant a new trial to a criminal defendant on the basis of any ground that would support reversal on appeal or because it believes that the verdict has resulted in a miscarriage of justice. MCR 6.431(B). A trial court's decision to grant a new trial is reviewed for an abuse of discretion. See, e.g., *People v Leonard*, 224 Mich App 569, 580; 569 NW2d. 663 (1997). In order to determine whether the trial court abused its discretion, we are required to examine the reasons given by the trial court for granting a new trial. *Id.* This Court will find an abuse of discretion if the reasons given by the trial court do not provide a legally recognized basis for relief. See *id.*; *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 539-543; 506 NW2d 890 (1993).

The first reason given by the remand court for granting defendant a new trial was the coercive effect of the immunity agreements. We begin our analysis by noting that immunity is an important legal device that has long been used to facilitate the effective prosecution of crime. See generally *People v McIntire*, 232 Mich App 71; 591 NW2d 231 (1998). Although Michigan courts have not specifically addressed the effect of testimony from an immunized witness on a criminal defendant's right to a fair trial, we are able to

glean some general rules from the courts of other jurisdictions. First and foremost is the notion that, in most cases, a promise of immunity or other favorable treatment is relevant only to the issue of the credibility of the witness and not to the admissibility of the immunized testimony. See, e.g., *Hoffa v United States*, 385 US 293, 311-312; 87 S Ct 408; 17 L Ed ·2d 374 (1966); *State v DeWitt*, 286 NW2d 379, 383-384 (Iowa, 1979); *State v Burchett*, 224 Neb 444, 455-456; 399 NW2d 258 (1986); *State v Bolden*, 979 SW2d 587, 590 (Tenn, 1998). Nevertheless, many courts have required that certain safeguards be employed when the state grants concessions in exchange for testimony in order to protect the defendant's right to a fair trial. These safeguards include (1) full disclosure of the terms of the agreements struck with such witnesses, (2) the opportunity for full cross-examination of such witnesses regarding the agreements and their effect,. and (3) instructions cautioning the jury to carefully evaluate the credibility of witnesses who have been induced by agreements with the prosecution to testify against the defendant. See, e.g., *United States v Dailey*, 759 F2d 192, 194, 196 (CA 1,, 1985); *Sheriff v Acuna*, 107 Nev 664, 669; 819 P2d 197 (1991); *Bolden, supra* at 590; *State v Nerison*, 136 Wis 2d 37, 46; 401 NW2d 1 (1987).

While it is clear that a grant of immunity, or other favorable treatment, may be conditioned on a, promise that the witness will testify completely and truthfully, *McIntire, supra*; see also *State v Fisher*, 176 Ariz 69, 73; 859 P2d 179 (1993); *People v Garrison*, 47 Cal 3d 746, 768; 254 Cal Rptr 257; 765 P2d 419 (1989); *State v Clark*, 48 Wash App 850, 859-860; 743 P2d 822 (1987), several state courts have reasoned that the

prosecution may not bargain with an accomplice for testimony conforming to a specific script or to a particular formulation of facts, without regard for the truth, see, e.g., *Fisher, supra* at 74; *People v Medina,* 41 Cal App 3d 438, 455-456; 116 Cal Rptr 133 (1974); *DeWitt, supra* at 384; *Burchett, supra* at 456; *Acuna, supra* at 669; *Bolden, supra* at 590-591; *Clark, supra* at 858-860. Underlying the rule is the notion that a witness placed under a strong compulsion to testify to a particular set of facts is no longer a free agent whose credibility can be evaluated by a jury. See *Medina, supra* at 453-454, citing *Rex v Robinson,* 30 BC 369; 70 DLR 755, 761-762 (1921). Relying on this rule, defendant contends that the immunity agreements improperly placed the witnesses under a strong compulsion to testify at trial in a manner consistent with their prior police statements. Although we agree that the immunity agreements provided some incentive for the witnesses to conform their trial testimony to their prior accounts of the incident, we are not persuaded that the agreements rendered the witnesses' testimony so tainted as to be inadmissible. The key distinction is the fact that the prosecution also expressly conditioned its grants of immunity on the witnesses providing *truthful* testimony.

We conclude that when a prosecutor decides to bargain with a witness on the basis of representations made by the witness during negotiations with the state, it is reasonable for the prosecutor to rely on the witness' assertion that such representations are truthful—especially when the representations are consistent with other facts within the prosecution's knowledge of the case. Accordingly, we think it is reasonable to allow the prosecution to condition a grant of

immunity, or other favorable treatment, on the truthfulness of the information providing the basis for the favorable treatment. In *Acuna, supra* at 668, the Nevada Supreme Court explained as follows:

> [I]t would be neither realistic nor fair to expect the State to enter into a bargain without assurances that the promisee's trial testimony would be consistent with the information he or she provided to prosecutors as a basis for leniency. We are simply unwilling to assume, and therefore base a rule of law upon, the proposition that our prosecutors will sit down with persons vulnerable to prosecution and commit them to testifying perjuriously. If the person seeking the bargain purports to have true information, and the State concludes that such information is reliable and would be of assistance in prosecuting other persons, the State, in return for a commitment of leniency, would have every right to expect that the promisee's trial testimony would be essentially consistent with the original information upon which the State's promise was induced. If the promisee reneges on the commitment to provide truthful and consistent trial testimony, the State will be free to withdraw from the bargain.

The Nevada court then held that a bargain for "specific trial testimony, i.e., testimony that is essentially consistent with the information represented to be factually true during negotiations with the State, and withholding the benefits of the bargain until after the witness has testified, is not inconsistent with the search for truth or due process." *Id.* at 669; see also *Bolden, supra* at 592 (holding that a condition in a plea agreement that a witness testify truthfully "necessarily engulfed" another provision requiring testimony consistent with the witness' prior statement to an FBI agent, thereby creating an agreement that "hinged upon truthful testimony"); *Clark, supra* at 860

("Thus, while the agreement provided some incentive for [the witness] to confirm his prior accounts of the killing, it provided an equal incentive that he not enter into the agreement at all unless the statement was in fact the truth."). We are persuaded by the reasoning of these courts.

In this case, defendant's right to a fair trial was further protected by the standard procedural safeguards, all of which were employed at trial. Cf. *People v Thompson*, 424 Mich 118, 134; 379 NW2d 49 (1985); *Nerison, supra* at 53. Therefore, we conclude that the terms of the immunity agreement did not provide defendant with a legally recognized basis for relief. Our conclusion is based on the following factors: (1) by agreeing to testify truthfully at trial in conformance with their prior statements to the police, the immunized witnesses effectively represented to the prosecution that their prior statements had been truthful, (2) the witnesses' police statements were consistent with the other evidence available to the trial prosecutor, (3) the immunity agreements were expressly conditioned on the witnesses providing truthful testimony at trial, and (4) the trial testimony of the immunized witnesses was introduced subject to the standard procedural safeguards.

The second reason given by the court for granting defendant's motion for a new trial merits less discussion. We are simply not persuaded that the original trial judge's decision to appoint independent attorneys for three of the immunized witnesses could have in any way amounted to intimidation of the immunized witnesses.

The court, on remand, relied exclusively on the persuasive authority of *Fisher, supra,* for the proposition

that the coercive effect of an immunity agreement requiring trial testimony consistent with a prior statement is increased when the trial court acts in concert with the prosecutor to impress upon the witnesses the need to testify in a particular fashion. In *Fisher, supra* at 71, the trial court entered into a "letter of agreement" with the prosecutor and a witness providing that if the witness was called to testify, her testimony would not "vary substantially in relevant areas to statements previously given to investigative officers." Further problematic was the fact that the jury was made aware that the trial court was a party to the agreement. *Id.* at 74. In the instant case, on the other hand, instead of directly participating in the immunity agreement, the trial court made an effort to avoid involvement by appointing independent counsel to advise the immunized witnesses. Beyond making the appointments, explaining the reason for the appointments, and verifying that the witnesses were satisfied with the appointments, the trial court did not interfere with the attorney-client relationship. Accordingly, we conclude that *Fisher, supra,* is inapposite.

We can find no legal basis for the trial court's conclusion that the original trial judge's instructions to the appointed attorneys deprived defendant of a fair trial. While the original trial judge informed the attorneys that they were to advise the immunized witnesses with regard to the subject matter of the witnesses' potential criminal exposure, there is no evidence that the original trial judge told the attorneys what to say.

Because the reasons given by the trial court for granting defendant's motion for a new trial do not provide a legally recognized basis for relief, we hold

that the trial court abused its discretion in granting defendant a new trial. *Leonard, supra* at 580; *Petraszewsky, supra* at 539-543.

Reversed and remanded with instructions to the trial court to reinstate defendant's convictions and sentences. We do not retain jurisdiction.