*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRA MARIE MOORE,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2025
9:29 AM

No. 361557
Wayne Circuit Court
LC No. 20-004389-01-FC

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions for (1) two counts of second-degree murder, MCL 750.317; (2) two counts of reckless driving causing death, MCL 257.626(4); (3) two counts of operating while intoxicated (OWI) causing death, MCL 257.625(4)(a); and (4) one count of operating a vehicle without a license, MCL 257.301. The trial court sentenced defendant to serve concurrent sentences of (1) 30 to 40 years in prison for each second-degree murder conviction; (2) 6 to 15 years in prison for each reckless driving conviction; (3) 7 to 15 years in prison for each OWI conviction; and (4) 90 days in jail for operating a vehicle without a license. We vacate defendant's convictions and remand for a new trial.

## I. FACTS

In July 2020, defendant attended a house party where she consumed alcohol. During the party, an altercation occurred at the front of the house, involving defendant and others, which lasted about 30 minutes and was mostly verbal until the last 10 minutes. At some point, defendant decided to get into her vehicle and drive onto the yard in an attempt to run people over. Defendant struck an attendee and drove away. One of the other party attendees, Dunigan Roosevelt, got into his vehicle, followed defendant, and attempted to call the police. Defendant sped, swerved, and did not remain in her lane. Eventually, defendant crashed into a vehicle, killing two victims. Defendant failed a field sobriety test, was arrested, admitted to drinking, and had a blood alcohol content level of 0.13. Notably, defendant's license had expired in 2012.

After defendant's arrest, on at least three occasions, the prosecution made plea offers to defendant. The initial plea offer was for defendant to plead guilty to the two counts of second-

-1-

degree murder in exchange for the dismissal of the remaining charges and a sentence of 18 to 30 years in prison. The plea offer was later amended to reflect a sentence of 16 to 30 years in prison. Defendant rejected each plea offer. The jury found defendant guilty, and the trial court sentenced defendant, as stated earlier. Defendant now appeals.

While this appeal was pending, defendant moved for a new trial or evidentiary hearing, arguing that defense counsel was ineffective for: (1) advising her to decline the plea offers, and (2) failing to request a jury instruction on the lesser included offense of manslaughter. The trial court granted defendant's motion for an evidentiary hearing, but it ultimately denied defendant's motion for a new trial, distinguished *People v Yeager*, 511 Mich 478; 999 NW2d 490 (2023), and found that: (1) despite defense counsel's "bad advice," there was not a reasonable probability that the trial court would have accepted the proposed plea offers in this case; and (2) defense counsel's failure to request a manslaughter instruction constituted harmless error.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that defense counsel was ineffective for failing: (1) to request an involuntary-manslaughter jury instruction, and (2) to provide defendant adequate advice of rights regarding the plea offers. Defendant further asserts that the trial court abused its discretion by denying defendant's motion for a new trial on these grounds. We agree in part and conclude that a new trial is warranted on the basis of defense counsel's failure to request an involuntary-manslaughter jury instruction.

## A. STANDARD OF REVIEW

We review a trial court's decision to grant or deny a new trial for an abuse of discretion. *People v Jones*, 236 Mich App 396, 404; 600 NW2d 652 (1999). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *People v Bowden*, 344 Mich App 171, 185; 999 NW2d 80 (2022). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007) (quotation marks and citation omitted). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *Id*. "Clear error occurs if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *People v Duha*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363115); slip op at 3 n 3 (quotation marks and citation omitted).

## B. ANALYSIS

The United States and Michigan Constitutions protect a defendant's right to a fair trial. US Const, Am VI; Const 1963, art 1, § 17. "This includes the right to the effective assistance of counsel." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). "A counsel's performance was deficient if it fell below an objective standard of professional reasonableness." *Id*. "The performance prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding

would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Both conditions must be met to establish ineffective assistance of counsel. *Id.* at 687.

"Claims of ineffective assistance of counsel center on deficiencies in the defense counsel's decision-making . . . ." *Isrow*, 339 Mich App 532 (quotation marks and citation omitted; alteration in original). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "If counsel's strategy is reasonable, then his or her performance was not deficient." *Isrow*, 339 Mich App at 532 (quotation marks and citation omitted). "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Id.*

## 1. JURY INSTRUCTIONS

On appeal, defendant first argues that defense counsel was ineffective for failing to request a manslaughter jury instruction. We agree.

In this case, defendant was convicted, *inter alia*, of two counts of second-degree murder. The elements of second-degree murder are as follows: (1) a death, (2) caused by an act of the defendant, and (3) the defendant acted with malice. *People v Spears*, 346 Mich App 494, 514, 522; 13 NW3d 20 (2023).[1] Malice may be established "by showing (1) the intent to kill, (2) the intent to cause great bodily harm, or (3) the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Gafken*, 510 Mich 503, 511; 990 NW2d 826 (2022).

The Michigan Supreme Court has clarified that "the *sole element* distinguishing manslaughter and murder is malice." *People v Holtschlag*, 471 Mich 1, 11; 684 NW2d 730 (2004) (quotation marks and citation omitted; emphasis in original). "[T]he distinction between murder and voluntary manslaughter is whether an intentional killing was provoked in a manner that explains or justifies the killing so as to mitigate criminal responsibility." *People v Yeager*, 511 Mich 478, 500; 999 NW2d 490 (2023). Specifically, "for an act to be considered voluntary manslaughter, the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their passions." *Id.* at 489. Notably, "the provocation must be sufficient to cause the defendant to act out of passion rather than reason, but it also must be sufficient to cause a reasonable person to lose control, not just the specific defendant." *Id.* Conversely, "[e]very unintentional killing of a human being is involuntary manslaughter if it is neither murder nor

---

[1] The additional element of "without justification or excuse," *People v Lange*, 251 Mich App 247, 251; 650 NW2d 691 (2002) (quotation marks and citation omitted), is no longer included as an element of second-degree murder. *Spears*, 346 Mich App at 522.

voluntary manslaughter nor within the scope of some recognized justification or excuse." *Holtschlag*, 471 Mich at 21 (quotation marks and citation omitted).

"[B]ecause both voluntary and involuntary manslaughter are necessarily included lesser offenses and 'inferior' to murder under MCL 768.32, 'when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence.' " *Yeager*, 511 Mich at 490 (citation omitted).

In *Yeager*, 511 Mich at 486, the defendant was convicted, *inter alia*, of first-degree murder. The jury was instructed on first-degree and second-degree murder, but it was not instructed on the lesser included offense of voluntary manslaughter. *Id*. at 486-487. The defendant appealed, arguing that defense counsel was ineffective for failing to request an involuntary-manslaughter jury instruction. *Id*. at 489. The testimony presented at trial reflected that defendant feared for her life at the time of the incident— "defendant's shooting of [her boyfriend] was the culmination of a series of events during which [her boyfriend] physically assaulted defendant, took her car and used it to attempt to run her over, and repeatedly threatened to kill defendant and . . . the neighbor who assisted her." *Id*. at 491-492. Accordingly, the Court explained that "[a] jury could reasonably conclude that the combination of physical and verbal threats from [defendant's boyfriend] throughout this unbroken chain of events stoked defendant's passions so that she acted out of heightened emotion rather than reason . . . ." *Id*. at 492. Therefore, "[b]ecause a rational view of the evidence would support a voluntary manslaughter instruction, that instruction should have been given." *Id*. at 494.

The Michigan Supreme Court went on to explain that when determining whether the failure to provide a manslaughter jury instruction constituted harmless error, "a reviewing court must consider the specific circumstances of the case in concert with the relevant offenses and ask whether the distinctions between the particular charges suggest that a jury's rejection of an intermediate charge demonstrates that the jury would have been unlikely to select a lesser charge." *Id*. at 497-498. The Court determined that considering the facts of the case, "the voluntary manslaughter instruction would have assisted the jury in considering defendant's state of mind at the time of the shooting in a manner not contemplated by instructions on first- and second-degree murder alone." *Id*. at 500. The Court ultimately held that the defendant was prejudiced by defense counsel's failure to request a manslaughter instruction, explaining that "[i]n the absence of instruction on the particular state of mind required for voluntary manslaughter, we cannot definitively conclude whether the jury would have determined that defendant's actions were provoked by inflamed passions or emotional excitement." *Id*. Accordingly, the Court concluded that defense counsel was ineffective for failing to request a voluntary-manslaughter jury instruction, and a new trial was ordered. *Id*. at 504.

In this case, defense counsel's theory during trial was that defendant "was in fight or flight survival mode" when she caused the car accident. In other words, defendant acted in fear because Roosevelt was chasing her. This theory falls squarely within the provocation and heat of passion element required by voluntary manslaughter. See *id*. at 489. Indeed, "the voluntary manslaughter instruction would have assisted the jury in considering defendant's state of mind at the time of the [accident] in a manner not contemplated by instructions on . . . second-degree murder alone." *Id*. at 500. As previously stated, "when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational

view of the evidence." *Id*. at 490 (quotation marks and citation omitted). Therefore, given the defense's theory of the case, defense counsel's failure to request a manslaughter instruction "fell below an objective standard of professional reasonableness" and, therefore, constituted deficient performance. *Fyda*, 288 Mich App at 450.

Accordingly, the question turns to whether defense counsel's failure to request the manslaughter instruction prejudiced the defense. *Id*. We hold that it did.

"[W]hether the absence of an instruction on a lesser included offense is harmless depends on the facts and circumstances of the case at bar." *Yeager*, 511 Mich at 496. The jury in this case, unlike the jury in *Yeager*, was not instructed on first-degree murder. *Id*. at 486-487. Therefore, this is not a case in which the jury's rejection or acceptance of an intermediate charge—for example, second-degree murder, opposed to first-degree murder—helped to demonstrate whether it would have been likely to select a lesser charge. Instead, the relevant inquiry is whether the jury considered "differing states of mind required for murder and . . . manslaughter . . . ." *Id*. at 501. The jury instruction regarding second-degree murder does "not encompass the distinct state of mind required for a voluntary manslaughter conviction." *Id*. at 500. Just like the Court in *Yeager*, we hold that "[i]n the absence of instruction on the particular state of mind required for voluntary manslaughter, we cannot definitively conclude whether the jury would have determined that defendant's actions were provoked by inflamed passions or emotional excitement." *Id*. Because the jury instructions in this case did not present differing states of mind required for murder and manslaughter, and because the defense theory in this case clearly portrayed the state of mind required for voluntary manslaughter, "we conclude that this gap in information provided to the jury is sufficient to undermine confidence in the outcome of defendant's trial." *Id*. at 501 (quotation marks and citation omitted).

In *Keeble v. United States*, 412 U.S. 205; 93 S Ct 1993; 36 L Ed 2d 844 (1973), the Supreme Court explored the possible outcomes that might follow from giving—or failing to give—a lesser-included offense instruction. The *Keeble* Court acknowledged the potential benefit that the defendant was denied—when he was refused an instruction on a lesser included offense at trial—as follows:

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the

availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict. [*Id*. at 212-213.]

In *Beck v. Alabama*, 447 US 625, 634; 100 S Ct 2382; 65 L Ed 2d 392 (1980), the Supreme Court also noted that "providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard[.]"

In this case, defense counsel chose to focus on malice as the intent to kill or intent to cause great bodily harm, but ignored the other definition of malice, which focuses on "the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Gafken*, 510 Mich at 511. Clearly, defendant's willful disregard here—in driving while intoxicated at high rates of speed—had the natural tendency to cause death. Nevertheless, counsel continued to inform defendant that the prosecutor could not prove malice. At the post-trial evidentiary hearing, defense counsel testified that she discussed the sentencing guidelines and plea offers with defendant, and "thought it was a very strong case against murder 2 because she didn't have malice." Defendant testified that her first attorney told her that "no jury would convict [defendant] of second-degree murder." Defendant also testified that trial counsel told her multiple times that the prosecutor did not have the evidence to convict her of second-degree murder.[2] Counsel admitted that she and defendant also discussed manslaughter, but counsel chose not to request the lesser included offense instruction because "[i]f I had, and [defendant] and I discussed this. If I had asked for a manslaughter charge I would have been giving [defendant] over to the jury on a silver platter." This error clearly prejudiced defendant.

Although defense counsel informed defendant of the potential sentences for each of the charged crimes, she did not inform defendant of the potential penalties that accompanied a manslaughter conviction. Notably, like OWI causing death, involuntary manslaughter would have carried a minimum penalty of 50 to 100 months' incarceration and a maximum penalty of 15 years' incarceration in this case.[3] Accordingly, no "down side" existed to requesting an involuntary manslaughter instruction. As the *Beck* Court stated, "providing the jury with the 'third option' of convicting on a *lesser included offense* ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Beck*, 447 US at 625 (emphasis added). And although the trial court stated that the jury "considered and contemplated another mind set, without malice, by way of the other charges" —referring to the OWI-causing-death and reckless-driving-causing-death jury instructions—those charges varied significantly from second-degree murder and are not lesser included offenses to second-degree murder.[4] Importantly, neither of those charges

---

[2] Defense counsel admitted to saying "I know it's not going to be murder 2. I know it's not." Defense counsel added, "[a]nd then I followed up with I can't make any guarantees."

[3] This assignment reflects defendant's D-VI score on her Presentence Investigation Report, and her consistent PRV assignment of 25 points across all offenses; moreover, both involuntary manslaughter and OWI causing death are class C offenses.

[4] M Crim JI 15.14a states that for reckless driving causing death, the prosecutor must prove that the defendant drove a "motor vehicle in willful or wanton disregard for the safety of persons or property," which "means more than simple carelessness but does not require proof of an intent to cause harm. It means knowingly disregarding the possible risks to the safety of people or

-6-

discussed the absence of malice that the voluntary manslaughter[5] or involuntary manslaughter[6] instructions sets forth. Simply having instructions regarding "another mind set, without malice"

---

property." And M Crim JI 15.6d states that a defendant is guilty of OWI causing death if they are guilty of causing death "while operating a motor vehicle with a high bodily alcohol content while . . . under the influence of alcohol[.]"

[5] M Crim JI 16.9 provides the instruction for voluntary manslaughter as a lesser included offense of murder as follows:

(1) The crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or anger brought about by adequate cause and before the defendant had a reasonable time to calm down. For manslaughter, the following two things must be present:

(2) First, when the defendant acted, [his / her] thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.

(3) Second, the killing itself must result from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and return to reason. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

[6] M Crim JI 16.10 (footnotes omitted) provides the instruction for involuntary manslaughter as follows:

(1) [The defendant is charged with the crime of _____/ You may also consider the lesser charge of] involuntary manslaughter. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant caused the death of [*name deceased*], that is, that [*name deceased*] died as a result of [*state alleged act causing death*].

[*Use (3) when gross negligence is alleged:*]

(3) Second, in doing the act that caused [*name deceased*]'s death, the defendant acted in a grossly negligent manner.

[*Use (4) when the act requires an intent to injure:*]

does not equate to instructing the jury regarding an unintentional killing without malice as a necessarily lesser included offense of murder. *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009). Moreover, "when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *Yeager*, 511 Mich at 490 (quotation marks and citation omitted).

Here, defense counsel's theory during trial was that defendant "was in fight or flight survival mode" when she caused the car accident. In other words, defendant acted in fear because Roosevelt was chasing her. Therefore, defense counsel argued the absence of malice to the jury. As previously stated, "the *sole element* distinguishing manslaughter and murder is malice." *Holtschlag*, 471 Mich at 11 (quotation marks and citation omitted; emphasis in original). Failing to provide a lesser-included offense instruction gives life to precisely what *Keeble* predicted: "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *Keeble*, 412 US at 212-213. As a result, we believe it is more probable than not that the trial court's decision that it was harmless error to withhold a manslaughter instruction undermined the verdict's reliability. See *People v Lowery*, 258 Mich App 167, 172-173; 673 NW2d 107 (2003).

Because defendant was prejudiced by defense counsel's failure to request a manslaughter jury instruction, the trial court abused its discretion by denying defendant's motion for a new trial. See *Yeager*, 511 Mich at 501; *Jones*, 236 Mich App at 404. Accordingly, we vacate defendant's convictions and remand to the trial court for a new trial. See *Yeager*, 511 Mich at 504.

## 2. PLEA OFFERS

Defendant further argues that defense counsel was ineffective for failing to adequately advise defendant regarding the plea offers in this case. But, because defendant is entitled to a new trial, this issue is moot. "An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004). As a result, we decline to consider this issue.

---

> (4) Second, in doing the act that caused [*name deceased*]'s death, the defendant intended to injure [*name deceased*]. The act charged in this case is assault and battery. The prosecution must prove the following beyond a reasonable doubt: First, that the defendant committed a battery on [*name deceased*]. A battery is a forceful or violent touching of the person or something closely connected with the person. The touching must have been intended by the defendant, that is, not accidental, and it must have been against [*name deceased*]'s will. Second, that the defendant intended to injure [*name deceased*].

> [(5) Third, that the defendant caused the death without lawful excuse or justification.]

-8-

We vacate defendant's convictions and remand to the trial court for a new trial.  We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney