NOTICE

Decision filed 03/20/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220002-U

NO. 5-22-0002

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Crawford County. |
| | ) | |
| v. | ) | No. 18-CF-117 |
| | ) | |
| JASON J. STRAWBRIDGE, | ) | Honorable |
| | ) | Christopher L. Weber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the trial court failed to substantially comply with the admonishments required by Supreme Court Rule 402(a) (eff. July 1, 2012), the trial court's order denying defendant's motion to withdraw his guilty plea is reversed.

¶ 2    On July 25, 2018, the State charged the defendant, Jason J. Strawbridge, with one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 2016)). Based upon negotiations between the State and defense counsel, on July 3, 2019, the State amended the charge against the defendant. In its amended information, the State still charged the defendant with one count of first degree murder (*id.*), but dropped the allegation that the defendant committed the murder with the use of a firearm. After the charge was amended, the defendant agreed to plead guilty to the murder charge in exchange for a sentencing cap of 45 years' imprisonment to be served at 100%, a possible monetary fine of up to $25,000, and 3 years of mandatory supervised release upon discharge from

1

the Illinois Department of Corrections. The trial court accepted the defendant's plea on July 3, 2019. The defendant was sentenced on August 26, 2019, to 45 years in prison, no monetary fine, and 3 years of mandatory supervised release.

¶ 3    On September 19, 2019, the defendant filed a *pro se* motion to withdraw his guilty plea and to vacate his sentence. He asserted that he believed that his sentence would only be 20 years, that there was reasonable doubt as to his guilt, and that his attorney was inexperienced. The defendant hired private counsel who filed an amended motion asserting that there was doubt as to the defendant's guilt; that there was a defense worthy of consideration; that the defense attorney provided ineffective assistance; and that the trial court did not properly admonish him before accepting his plea as mandated by Illinois Supreme Court Rule 402 (eff. July 1, 2012). After the hearing on the defendant's motion to withdraw his guilty plea, the trial court denied the defendant's motion on December 21, 2021.

¶ 4    The defendant appeals from the trial court's order. He argues that the trial court did not substantially comply with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), and thus the trial court abused its discretion in denying his motion to withdraw his guilty plea. The defendant also contends that his plea counsel provided ineffective assistance resulting in his unknowing and unintelligent plea. The defendant asks this court to reverse the trial court's denial of his motion to withdraw his guilty plea and remand for a new hearing.

¶ 5                                    I. Background

¶ 6    On July 24, 2018, Sandra Kendall, a 62-year-old resident of Crawford County, was the victim of a shooting in her home. She was shot once in the head and died. An autopsy revealed that Sandra's cause of death was the gunshot to her head, although she had also sustained five

2

fractured ribs. At the time of the shooting, two other people were present in her home—her daughter, Kristine Phillippe, and the defendant, who was Kristine's boyfriend.

¶ 7    Ten months before Sandra's murder, the defendant and Kristine moved into a camper approximately one hundred yards south of Sandra's home. During these 10 months, Kristine and her mother, Sandra, had an antagonistic, and often violent, relationship. Kristine was the aggressor. The source of Kristine's anger was the house that Sandra owned. Sandra's father gave her the home. Kristine believed that Sandra did not deserve the house and that her grandfather should have given her the house. The record on appeal is replete with incidents when Kristine battered her mother. On many occasions, Sandra called 911 for assistance. The record reflects that during these fights, Kristine attempted to place her mother in a chokehold, pulled her hair, kicked her in the face, and destroyed property. Sandra suspected that Kristine was drugging her food and drinks. Sandra stated that the defendant "always stuck up for her when [Kristine] would get in one of her moods." On November 19, 2017, Sandra informed the 911 dispatcher that the defendant had "nothing to do with" the physical injuries and property damage Kristine had caused that evening. During the same call with the 911 dispatcher, Sandra stated that she was afraid of her daughter.

¶ 8    The night before Sandra was murdered,[1] Ricky and Reba Stephens were visiting with Sandra in her house. Two other people were possibly present when the Stephens couple visited Sandra—Ryan and Dorothy Gray. The presence of the Grays is disputed in an investigative report, but the Grays had been in Sandra's house at some point close in time to the day Sandra was murdered. During this visit with Sandra, both couples urged Sandra to seek an order of protection against her daughter, Kristine. During this conversation, Kristine entered Sandra's house although

---

[1]There is an uncertainty about whether the visit was one night or two nights before the murder.

she had been told that she was no longer welcome there. Kristine began arguing with Ryan. Kristine left the house and then returned carrying a chrome gun. Kristine allegedly waved the gun around and began making threats that she would kill all of them. The defendant was not present during this altercation.

¶ 9    On the day of the murder, Kristine and her sister, Katherine Woods, spoke by telephone. During this conversation, Kristine stated that she had fired her gun in the camper earlier that day while visualizing Sandra. During the investigation, Katherine informed Illinois State Police Sergeant Stacy Kinter that Kristine had repeatedly told her that she wanted Sandra dead. Katherine told the police that Kristine was "severely dangerous."

¶ 10    On the same day as the murder, Ryan Gray convinced Sandra to obtain an emergency order of protection against Kristine. Ryan went with her to the courthouse. Ryan informed the officers who would eventually serve the order of protection that Kristine had a gun in her camper. The order of protection did not include the defendant.

¶ 11    At 4:17 p.m. on the date of Sandra's murder, Deputy Michael Delaney and Deputy J. Sprinkle were dispatched to Sandra's house in response to a "domestic problem." While traveling to Sandra's house, the deputies were informed that they needed to serve Kristine with the emergency order of protection. Upon arrival, the defendant advised the deputies that Kristine and Sandra were "into it again." Sandra told Deputy Delaney that Kristine forced her way into the house, and then Kristine began yelling at, and spitting on, her. The defendant walked to Sandra's house and removed Kristine. Kristine informed the deputies that Sandra had hit her in the face and cut her with a knife. The deputies did not believe Kristine, and when they told her that they did not believe her story, she began yelling obscenities at them. Deputy Delaney asked the defendant what

4

had happened to Kristine, and he explained that Kristine may have gotten "banged up a little" when he extricated her from Sandra's house.

¶ 12    Deputy Sprinkle informed Kristine that Sandra had obtained an order of protection against her, and that she had three days to remove her camper from Sandra's property. Kristine became infuriated. The deputies told her that she was not allowed to go within 100 feet of Sandra's house. The deputies then went back to Sandra's house. Deputy Delaney reconnected Sandra's phone, told her to call if there were any concerns, and that they would contact Ryan and check back with her that evening. The deputies left the scene at 6:06 p.m.

¶ 13    Sandra was murdered between 6:06 p.m. and 7:42 p.m. At 7:42 p.m., Sandra's husband, Danny Kendall, returned home from an area hospital accompanied by his daughter Tiffany Guyer. From Danny's victim impact statement, he stated that when they arrived at the house, all the lights were off, and the curtains were closed. The defendant was holding a gun[2] in the hallway, and Kristine was sitting on the couch looking at the floor. Danny asked Kristine what was "going on," to which Kristine replied, "nothing." Only then did Danny notice that his wife was lying on the floor "with her head shot off." Danny again asked what was going on, and this time Kristine responded, "nothing Dano; she just has a flesh wound." Danny's daughter went outside and called 911. Kristine then left the house by the front door. The defendant ran out the back door, got into his vehicle, and drove away. Outside, Kristine began yelling at Tiffany that she had already called 911. Tiffany then confirmed with the 911 dispatcher that no one had called in a shooting before Tiffany's call.

---

[2]In the trial court's order denying the defendant's motion to withdraw his guilty plea, the court acknowledges that "there is some inconsistency in the record as to whether [the defendant ever held the gun]."

¶ 14    After departing Sandra's house, Kristine walked over to her camper. The responding law enforcement officers located Kristine in her camper wearing only a bathrobe. They found a pile of her clothing beside a fire pit behind Sandra's house. The deputies who had served Kristine with the order of protection earlier that day were able to identify the clothing near the fire pit as the clothing Kristine was wearing when she was served. When the officers interviewed Kristine that night, she told them that Sandra shot herself.

¶ 15    A 9-millimeter gun was found in Sandra's home. Testing later confirmed that the gun was the one used to shoot Sandra. The investigating agencies determined that the gun was owned by the defendant.

¶ 16    The police found the defendant and arrested him for driving under the influence. After arresting the defendant, the police found two empty 9-millimeter shell casings on his person. When asked by the arresting officer why he had not pulled over his vehicle when directed to do so, the defendant responded that he was "just covering for somebody."

¶ 17    Detective Tim Brown of the Illinois State Police interrogated the defendant at the station. Deputy Terry Carr, the lead investigator with the Crawford County Sheriff's Department, was also involved in the interrogation. The defendant denied that he shot Sandra. Detective Brown told the defendant that Kristine said that he did shoot Sandra. The defendant did not believe Detective Brown, who then offered to bring Kristine into the defendant's interrogation room. Kristine then told the defendant to tell the truth—to tell the detective that he killed Sandra. The defendant immediately responded, "Fine, I shot her." Detective Brown asked the defendant why he had shot Sandra. The defendant turned to Kristine and asked her what his answer should be. Kristine suggested that his motivation was "anger." The defendant then answered, "sure, we'll go with that." The defendant told Detective Brown, "whatever, cut her loose and I'll take the heat." The

defendant then stated that he was sick of how Sandra treated Kristine and so he shot her. Detective Brown asked the defendant, "you want to take the rap for it?" The defendant responded, "might as well." The defendant told the officers to give Kristine his vehicle and his dog.

¶ 18    Kristine was also interrogated, and throughout the questioning, she maintained that the defendant was the shooter. However, Detective Tim Brown of the Illinois State Police noted that Kristine's versions of the events that evening continuously changed. First, Kristine stated that she was outside of the house when she heard the shot. Then, she stated that she was inside the house, but in a different room, when she heard the shot. Next, Kristine stated that she was holding the gun, but the defendant's hand was over her hand, and he pulled the trigger. In another version, Kristine stated that she had the gun in her hand when the two shots were fired.

¶ 19    The State charged the defendant with one count of first degree murder and charged Kristine with one count of first degree murder on an accountability theory. Kristine reached a plea deal with the State. She pled guilty to one count of home invasion and was sentenced to 18 years of imprisonment in the Illinois Department of Corrections. As part of the conditions of her plea agreement, Kristine agreed to testify against the defendant.

¶ 20    On October 17, 2018, the defendant recanted his confession in another interview with Detective Tim Brown. The defendant explained that Kristine had more to lose because she was younger than he was and she had children, so he decided to "take the blame for it." In doing so, he believed that Kristine would not be charged. He stated that he had a bad liver and that doctors had told him he only had 5 to 10 years to live. On the date Sandra was killed, the defendant stated that he walked into her house and saw Kristine fighting with her. The defendant said that he attempted to push the two women apart but was unsuccessful. He left Sandra's house and began walking toward the camper. As he reached the camper, the defendant stated that he heard a shot. He

7

immediately returned to Sandra's house and saw that Kristine had her mother on the floor, and as Kristine and her mother continued this struggle, the defendant saw Kristine shoot her mother.

¶ 21    On July 3, 2019, the defendant pled guilty to an amended count of first degree murder. The amendment omitted the use of a gun as the cause of Sandra's death. Instead, the amended information stated:

> "That on or about the 24th day of July, 2018, in Crawford County, Illinois, JASON J. STRAWBRIDGE, committed the offense of FIRST DEGREE MURDER, in that the said Defendant killed Sandra Kendall without legal justification when he kicked her in the ribs and also caused an injury to her head, with the intent to kill Sandra Kendall or cause her great bodily harm, in violation of Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes. Class M Felony."

The State recited the amended information as its factual basis for the defendant's plea, and defense counsel stipulated to the facts. The court noted that as part of the plea agreement, the State had agreed to cap the sentence at 45 years. The trial court did not indicate its approval and agreement to be bound by the sentencing cap at the plea hearing or the sentencing hearing. However, at sentencing, the trial court sentenced the defendant in keeping with that agreement.

¶ 22    The defendant filed a timely *pro se* motion to withdraw his guilty plea stating that he pled guilty because he was under the belief that he would be sentenced to 20 years. He alleged that there was reasonable doubt that he had committed the murder, and that a more experienced defense attorney would have fared better at trial.

¶ 23    The defendant hired a private attorney to represent him on his motion to withdraw his guilty plea. On September 24, 2020, postplea counsel filed an amended motion to withdraw, alleging that the ends of justice would be better served by having the defendant's case submitted to a jury in

8

that there was reasonable doubt as to his guilt. Postplea counsel also alleged that the trial court's Rule 402 admonishments were insufficient, and that trial counsel was ineffective. Postplea counsel attached the defendant's affidavit and an affidavit from William R. Clutter, a licensed private detective who specialized in criminal defense investigations with an emphasis on claims of actual innocence.

¶ 24    In his affidavit, the defendant stated that he was innocent and that his liver disease affected his decisions to confess and to plead guilty. He further indicated that he did not know that Kristine was going to shoot her mother. The defendant expressed his beliefs that he had a defense worthy of a jury's consideration. He was unaware that experts could have been hired to assist in his defense and stated that his attorney had not mentioned this possibility. Furthermore, he would not have pled guilty if he had known. The defendant asserted that his attorney did not review the State's evidence with him, and thus, he could not have made a knowing and voluntary decision to plead guilty. The defendant also stated that he would not have pled guilty if he had been informed that he had the right to persist in his not guilty plea and/or if he had known that he maintained the right to be confronted by the witnesses against him.

¶ 25    Clutter's affidavit contained details of his investigation and his opinions about this case. Clutter interviewed Detective Brown who indicated his belief that Kristine was the shooter. Detective Brown had finally gotten Kristine to admit that she had the gun in her hand and fired the first shot that went through a television set. Blood and hair DNA evidence from a yellow sweatshirt that Kristine had been seen wearing earlier in the day, was tested, and matched Sandra. The sweatshirt was found discarded in a fire pit near the camper. Clutter stated his opinion within a reasonable degree of forensic certainty that the large bloodstain and clump of hair on the yellow sweatshirt worn by Kristine was the result of her close proximity to Sandra when the bullet was

9

fired. In contrast, the defendant's clothing reflected a widely dispersed pattern of bloodstains on his hair, face, shirt, and shorts. Clutter opined that within a reasonable degree of forensic certainty, the widely dispersed pattern of bloodstains was consistent with the defendant's statement that he was standing several feet away from Sandra when she was shot. Clutter stated that this distinction of the large bloodstain on Kristine versus the widely dispersed bloodstains on the defendant was consistent with the defendant's story about where he was standing when Kristine shot her mother. Clutter also explained the gunshot residue discrepancy. First, the defendant informed Detective Brown that Kristine washed her hands at the kitchen sink. Photographs taken of the kitchen sink by the investigating officers showed that there was a large amount of blood present. Clutter explained that when Kristine washed the blood from her hands that the gun residue could have also been washed off. The defendant acknowledged handling the gun after the shots were fired, and Clutter stated that some residue could have transferred to the defendant due to his handling of the weapon and/or because he was in the same room when the shot was fired.

¶ 26   Postplea counsel also filed a second-amended motion to withdraw the defendant's guilty plea on January 28, 2021. The trial court held its hearing on the defendant's motion to withdraw the guilty plea on July 27, 2021.

¶ 27   The defendant's trial counsel testified that she was the part-time Crawford County Public Defender. The defendant's case was counsel's first murder case. She testified that she had been involved in a couple of cases with DNA and fingerprint evidence, but she had no experience with gunshot residue or ballistics evidence. Counsel confirmed that she did not seek funds for investigators or experts to assist her with evidence that may have required expert assistance, and that she had not asked for funding in any earlier cases she defended. Instead, she relied upon internet searches and spoke with people she knew who owned guns. She also participated in a

10

three-way call with the State and the State's expert. Counsel did not interview witnesses, visit the crime scene, ask for evidence to be tested, and did not view the evidence that was collected. Counsel testified that she did not believe that the defendant was guilty, but she felt that the jury would believe that he was the shooter given the scientific evidence. However, she admitted that there was a lot of evidence and arguments that supported a theory that Kristine was the shooter.

¶ 28    The defendant testified that he was innocent. He stated that his decision to confess and plead guilty was affected by the fact that he suffered from cirrhosis of the liver. He testified that his attorney did not develop a defense to his case and had conducted no investigation. He stated that he never saw any of the State's evidence or statements of witnesses, and testified that he would not have pled guilty if he had known about the existing evidence. Furthermore, the defendant stated that he would not have pled guilty if he had been made aware that he would have had the right to confront witnesses against him at trial.

¶ 29    On December 21, 2021, the trial court issued its order denying the defendant's motion to withdraw his guilty plea.

¶ 30                                 II. Analysis

¶ 31    The defendant first argues that the trial court did not substantially comply with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) at his plea hearing, and on that basis, the trial court should have granted his motion to withdraw his guilty plea.

¶ 32    The act of entering a plea of guilty is "grave and solemn." *Brady v. United States*, 397 U.S. 742, 748 (1970). If a defendant is allowed to change his mind so that a jury can hear his case, the guilty plea would become "a temporary and meaningless formality reversible at the defendant's whim." *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975).

¶ 33    Allowing a defendant to withdraw his plea is not automatic and should be based on a need to correct a manifest injustice. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009); *People v. Hillenbrand*, 121 Ill 2d 537, 545 (1988). The defendant bears the burden to demonstrate that it is necessary that he be allowed to withdraw his plea. *People v. Feldman*, 409 Ill. App. 3d 1124, 1127 (2011) (quoting *People v. Dougherty*, 394 Ill. App. 3d 134, 140 (2009)), *overruled on other grounds by People v. Walls*, 2022 IL 127965.

¶ 34    The trial court should allow a plea to be withdrawn if (1) the plea was entered on a misapprehension of fact or law, (2) there is doubt as to the defendant's guilt, (3) the defendant has a meritorious defense, or (4) the ends of justice would be better served by submitting the case to a jury. *People v. Davis*, 145 Ill. 2d 240, 244 (1991) (citing *People v. Morreale*, 412 Ill. 528, 531-32 (1952)).

¶ 35    A trial court's decision to grant or deny a motion to withdraw a guilty plea is within the trial court's sound discretion. *Delvillar*, 235 Ill. 2d at 519 (citing *People v. Walston*, 38 Ill. 2d 39, 42 (1967)); *People v. Hale*, 82 Ill. 2d 172, 175-76 (1980). Therefore, we will not reverse the trial court's decision denying a motion to withdraw a guilty plea unless the trial court clearly abused its discretion. *Delvillar*, 235 Ill. 2d at 519. A court's ruling constitutes an abuse of discretion if it is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009) (citing *People v. Hall*, 195 Ill. 2d 1, 20 (2000)).

¶ 36    Due process requires that a guilty plea must be knowing and voluntary. *People v. Whitfield*, 217 Ill. 2d 177, 195 (2005); *People v. Kidd*, 129 Ill. 2d 432, 443 (1989). Before we review the content of the trial court's admonishments at the plea hearing, we briefly review the requirements of Illinois Supreme Court Rule 402(a).

¶ 37    Accordingly, Illinois Supreme Court Rule 402(a) requires that, prior to accepting a guilty plea, the trial court admonish the defendant (1) of the nature of the charge; (2) of the minimum and maximum sentence and whether the defendant is subject to extended-term or consecutive sentencing; (3) that the defendant has the right to plead not guilty; and (4) that if the defendant pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The requirements of Rule 402 are partly derived from the United States Supreme Court opinion in *Boykin v. Alabama*, 395 U.S. 238 (1969). In *Boykin*, the Supreme Court held that a defendant's due process rights are violated if the trial court accepts a guilty plea "without an affirmative showing, placed on the record, that the defendant voluntarily and understandingly entered his plea of guilty." Ill. S. Ct. R. 402, Committee Comments (rev. May 20, 1997).

¶ 38    In admonishing a defendant, the trial court must substantially comply with the requirements of Illinois Supreme Court Rule 402. *Whitfield*, 217 Ill. 2d at 195. Substantial compliance with Supreme Court Rule 402 does not mean literal compliance. *People v. Dismore*, 33 Ill. App. 3d 495, 501-02 (1975). Substantial compliance is determined by the admonishments provided to the defendant at the hearing when the plea of guilt is received. *People v. Blankley*, 319 Ill. App. 3d 996, 1007 (2001). A defendant's due process rights are violated if the trial court does not substantially comply with the required admonishments. *Whitfield*, 217 Ill. 2d at 195. However, failure to comply with all the Rule 402 admonishments does not necessarily establish a due process violation or other grounds that would allow a defendant to withdraw his guilty plea. *Dougherty*, 394 Ill. App. 3d at 139 (citing *Davis*, 145 Ill. 2d at 244). Defendant must establish that real justice was denied or that he was prejudiced by the inadequate admonishments. *Id*.

13

¶ 39    We review the trial court's compliance with Rule 402(a) on a *de novo* basis. *People v. Chavez*, 2013 IL App (4th) 120259, ¶ 14. "Under a *de novo* standard of review, the reviewing court owes no deference to the trial court's judgment or reasoning." *People v. Jackson*, 2021 IL App (1st) 190263, ¶ 38.

¶ 40    At the start of the plea hearing, the State provided its factual basis for the first degree murder charge. The defendant's attorney stipulated that if the case went to trial, the State would present evidence supporting its factual basis.[3] The trial court asked the defendant if he had fully discussed the case with his attorney to his satisfaction. The defendant responded in the affirmative. The court asked the defendant if there was "anything concerning you entering a guilty plea today *** that you are unclear of or that you have questions about?" The defendant answered in the negative.

¶ 41    To determine if the defendant has established a Rule 402(a) violation, we review the content of the trial court's admonishments to determine what, if anything, was omitted. We may also consider the entire record in determining whether the defendant understood the admonishments. *People v. Krantz*, 58 Ill. 2d 187, 192 (1974) (citing *People v. Mendoza*, 48 Ill. 2d 371, 373-74 (1971)); *People v. Sutherland*, 128 Ill. App. 3d 415, 419 (1984). In reviewing the admonishments provided, "the remarks and advice of the court must be read in a practical and realistic manner." *Sutherland*, 128 Ill. App. 3d at 419 (discussing the predecessor to Rule 402 (citing *People v. Flathers*, 414 Ill. 486 (1953))). "If an ordinary person in the circumstances of the accused would understand them as conveying the information required by the rule, the essentials have been complied with." *Id.*

---

[3]The State's factual basis in this case consisted of a recitation of the allegations contained in the amended information without any detail and or specificity as to potential witness testimony and forensic and other documentary evidence supporting the first degree murder charge.

14

¶ 42    Rule 402(a)(1) (Ill. S. Ct. R. 402(a)(1) (eff. July 1, 2012)) requires the trial judge to confirm that the defendant understands the "nature of the charge." Before the plea hearing, the defendant's attorney negotiated with the State and the State agreed to amend the information. The amended information charged the defendant with first degree murder but omitted the use of a firearm. The State alleged that the defendant kicked Sandra in the ribs and caused an injury to her head without legal justification and with the intent to kill or cause great bodily harm to Sandra. 720 ILCS 5/9-1(a)(1) (West 2016).

¶ 43    At the plea hearing, the judge asked the defendant if he understood that he was pleading guilty to first degree murder. The defendant responded in the affirmative. The Illinois Supreme Court has clearly stated that in accepting a guilty plea, "the trial court is not required to apprise a defendant of the elements of the crimes with which he is charged before accepting a guilty plea." *People v. Jackson*, 199 Ill. 2d 286, 296 (2002) (citing *People v. Barker*, 83 Ill. 2d 319, 329-30 (1980)). Defense counsel stated during the hearing that she had a "chance to review" the amended information with the defendant. The trial court asked defense counsel if she needed the court to "read over that Amended Information with [the defendant] and advise him of that?" Defense counsel stated that reading the amended information was not necessary. Thereafter, the trial court asked the defendant if there was anything about the amended information and his planned guilty plea that he was "unclear of" or that he had "questions about." The defendant indicated that he did not have any questions about the amended information. Although the defendant contends on appeal that the trial court did not adequately admonish him as to the "nature of the case," we find that the Rule 402(a)(1) admonishments he received were appropriate and in compliance with the law.[4]

---

[4]Although the trial court asked the defendant if he had questions about the plea he was about to enter, the court did not decide "that there is a factual basis for the plea" as contemplated by Illinois Supreme Court Rule 402(c) (eff. July 1, 2012). The trial court's purpose with Rule 402(c) is "to insure that defendant is not pleading guilty to a crime which his acts and mental state do not support." *People v. Dilger*, 125 Ill.

¶ 44    Rule 402(a)(2) (Ill. S. Ct. R. 402(a)(2) (eff. July 1, 2012)) requires the trial judge to confirm that the defendant understands the minimum and maximum sentences "prescribed by law" that he could face by pleading guilty. The admonition process in this case contained an additional component in that the State and defense counsel had negotiated a sentencing cap. The foundation of a negotiated sentence has its origins in contract principles. See *People v. Linder*, 186 Ill. 2d 67, 72 (1999); *People v. Evans*, 174 Ill. 2d 320, 326-27 (1996).

¶ 45    Because the parties negotiated a sentencing cap, the trial court was required to comply with the requirements of Illinois Supreme Court Rule 402(d) (eff. July 1, 2012). Rule 402(d) establishes a protocol for the parties and the trial court when a plea agreement is reached. Rule 402(d)(2) provides:

> "If a tentative plea agreement has been reached by the parties which contemplates entry of a plea of guilty in the expectation that a specified sentence will be imposed ***, the trial judge may permit, upon request of the parties, the disclosure to him or her of the tentative agreement and the reasons therefor in advance of the tender of the plea. At the same time the trial judge may also receive, with the consent of the defendant, evidence in aggravation or mitigation. The judge may then indicate to the parties whether he or she will concur in the proposed disposition; and if the judge has not yet received evidence in aggravation or mitigation, he or she may indicate that his or her concurrence is conditional on that

---

App. 3d 277, 281 (1984). The intent behind the rule is to protect the accused " 'by ensuring that they have not pleaded guilty by mistake or under a misapprehension, or been coerced or improperly advised to plead to crimes they did not commit.' " *People v. Bannister*, 378 Ill. App. 3d 19, 35 (2007) (quoting *People ex rel. Daley v. Suria*, 112 Ill. 2d 26, 32 (1986)). Although here, the trial court did not articulate its determination that the plea was supported by the State's factual basis, the defendant does not raise this issue on appeal, and Illinois case law otherwise supports our conclusion that the trial court complied with Rule 402(a) in admonishing the defendant of the "nature of the case."

evidence being consistent with the representations made." Ill. S. Ct. R. 402(d)(2) (eff. July

1, 2012).

In addition, Rule 402(d)(3) provides further guidance on the matter:

"If the parties have not sought or the trial judge has declined to give his or her concurrence

or conditional concurrence to a plea agreement, the judge shall inform the defendant in

open court at the time the agreement is stated *** that the court is not bound by the plea

agreement, and that if the defendant persists in his or her plea, the disposition may be

different from that contemplated by the plea agreement." Ill. S. Ct. R. 402(d)(3) (eff. July

1, 2012).

¶ 46 Having reviewed the entire plea hearing transcript, we find that the trial court did

not directly state that it agreed with, or conditionally agreed with, the sentencing cap. At

best, the trial court inferred its acceptance by including the agreed-to sentencing cap as the

upper sentence of the applicable range. The following is what transpired during the plea

hearing:

"THE COURT: *** [T]he State is agreeing to a sentencing cap of 45 years.

Therefore, the possible penalties would be a sentence of 20 to 45 years in the Illinois

Department of Corrections to be followed by three years of mandatory supervised release.

That sentence would be served at one hundred percent, meaning that you would receive no

good time credit for that sentence. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I'll ask also ***, is the State going to be seeking any fine, or

have you thought of that yet? Is the maximum fine $25,000?

MR. HARTRICH [(STATE'S ATTORNEY)]: I believe so.

17

THE COURT: Okay. You could also be fined up to $25,000, Mr. Strawbridge. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

\* \* \*

THE COURT: \*\*\* I've noted for the record that the State has agreed to a sentencing cap of 45 years, and the case will need to be set for a sentencing hearing \*\*\*."

¶ 47　We find that the trial judge's failure to specifically concur in the State's proposed sentencing cap is problematic. Without confirmation that the trial court agreed with the cap, the defendant was pleading guilty without the trial court's assurance that it would not sentence the defendant to a longer sentence. See *People v. Lambrechts*, 69 Ill. 2d 544, 556-57 (1977) (where the Illinois Supreme Court noted that if the trial court does not concur in the agreed-to sentence, "a defendant has no right, constitutional or otherwise, to know in advance the specific sentence which will be imposed upon him" and the court is under no obligation to follow the recommendations embodied in a plea agreement (citing ABA Standards, Pleas of Guilty, § 3.3(b), commentary; ABA Standards, Pleas of Guilty, § 3.3(c))).

¶ 48　We note that after the defendant sought leave to withdraw his guilty plea and the trial court reviewed the transcript of the plea hearing, the trial court stated: "the court assented to be bound by the sentencing cap when it stated, 'Therefore, the possible penalties would be a sentence of 20 to 45 years in the Illinois Department of Corrections to be followed by three years of mandatory supervised release.' " As we indicated earlier in this order, one could presume that the trial court assented to the sentencing cap because of the phrasing used to the effect that the sentencing range was "20 to 45 years," but no defendant should be required to make presumptions as to the sentence he or she is facing. It is incumbent upon the trial court to state its concurrence or conditional

18

concurrence to the plea agreement. Ill. S. Ct. R. 402(d) (eff. July 1, 2012). In this case, we find that the trial court did not clearly and directly indicate its agreement to the parties' agreed-to sentencing cap. Although the defendant did not specifically raise this aspect of the rule admonishments he received, we address the issue because our review is *de novo*. *People v. Meza*, 376 Ill. App. 3d 787, 789 (2007) (citing *People v. Lozada*, 323 Ill. App. 3d 1015, 1018 (2001)).

¶ 49    Our inquiry does not end with our conclusion that the trial court's Rule 402(a)(2) admonishments were incomplete. We must also determine if the defendant was prejudiced by the incomplete admonishment. *Dougherty*, 394 Ill. App. 3d at 139 (citing *Davis*, 145 Ill. 2d at 244). However, before we determine whether the defendant was prejudiced by this incomplete admonishment, we review the remaining admonishments provided to the defendant at the plea hearing.

¶ 50    Illinois Supreme Court Rule 402(a)(3) requires the trial court to confirm that the defendant understands that he has the right to plead guilty or not guilty. Ill. S. Ct. R. 402(a)(3) (eff. July 1, 2012). Here, the trial court made no mention of, nor inquired about, the defendant's understanding that it was his right to plead guilty or to plead not guilty. The complete omission of this mandatory admonishment establishes that the trial court did not comply with Rule 402(a)(3). *Sutherland*, 128 Ill. App. 3d at 426.

¶ 51    Illinois Supreme Court Rule 402(a)(4) requires the trial court to confirm that the defendant understands that if he pleads guilty: "there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him ***." Ill. S. Ct. R. 402(a)(4) (eff. July 1, 2012). At the plea hearing in this case, the following exchange occurred:

19

"THE COURT: Okay. Furthermore, Mr. Strawbridge, do you understand that by pleading guilty today you are waiving your right to a jury trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand what a jury trial is?

THE DEFENDANT: Yes.

THE COURT: Have you discussed waiving your right to a jury trial with your attorney?

THE DEFENDANT: Yes.

THE COURT: And you're waiving that right freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you are also waiving your right to a bench trial in this case.

THE DEFENDANT: Yes.

THE COURT: And do you understand what a bench trial is?

THE DEFENDANT: Yes.

THE COURT: Have you discussed waiving your right to a bench trial with your attorney?

THE DEFENDANT: Yes.

THE COURT: And are you waiving that right freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: And have you discussed with your attorney that the State's burden of proof in this case is beyond a reasonable doubt?

THE DEFENDANT: Yes.

20

THE COURT: And she has explained that to you fully?

THE DEFENDANT: Yes.

THE COURT: Okay. With regard to your guilty plea to the Amended Information charging First Degree Murder, is your guilty plea your own free and voluntary act?

THE DEFENDANT: Yes."

¶ 52    While the trial court addressed the fact that the defendant's proposed plea would obviate a trial of any kind, the trial court did not admonish the defendant about his right to be "confronted with the witnesses against him." Here, the defendant had no prior experience with felony charges, and thus likely did not fully understand that waiving his right to a bench or jury trial included waiving his right to confront any witness who may provide evidence against him. Moreover, the State's decision to read the amended information as its factual basis—omitting any reference to evidence and witnesses supporting its charges—compounded the court's omission of the defendant's important right to confront witnesses. Thus, we conclude that the trial court did not fully comply with the Rule 402(a)(4) admonishments. See *Sutherland*, 128 Ill. App. 3d at 426; *People v. Thompson*, 10 Ill. App. 3d 455, 456 (1973); *People v. Bolden*, 7 Ill. App. 3d 730, 732 (1972).

¶ 53    Despite the defendant's argument to the contrary, Illinois courts have held that a trial court can be in substantial compliance with Supreme Court Rule 402 even if it omits one or more of the admonitions. In *People v. Dougherty*, the court found that there was substantial compliance with Rule 402 even though the trial judge did not admonish the defendant on every provision. *Dougherty*, 394 Ill. App. 3d at 139. The court found that the trial judge substantially complied with Rule 402 because the evidence established that the defendant entered his plea voluntarily and with full understanding. *Id.* The court reasoned that the purpose of Rule 402 admonishments "is to

21

ensure that a defendant understands his plea, the rights he has waived by pleading guilty and the consequences of his action." *Id.* at 138 (citing *People v. Johns*, 229 Ill. App. 3d 740 (1992)). Literal compliance is not mandated. *Id.* at 139 (citing *People v. Burt*, 168 Ill. 2d 49 (1995)). The court defined "substantial compliance" as follows: "although the trial court did not recite to the defendant, and ask defendant if he understood, all the components of Rule 402(a), the record nevertheless affirmatively and specifically shows that the defendant understood them." *Id.* at 138 (citing *People v. Walker*, 109 Ill. 2d 484 (1985)). Whether the standard of "substantial compliance" has been met depends upon the facts of each case. *Id.* (citing *People v. Dennis*, 354 Ill. App. 3d 491 (2004)). To determine whether the defendant's guilty plea was intelligently and voluntarily given in the absence of full compliance with the Rule 402 admonishments, the court may consider the entire record. *Id.* at 139 (citing *Krantz*, 58 Ill. 2d 187).

¶ 54     Of importance to our consideration of the entire record is the transcript of the hearing on the defendant's motion to withdraw his guilty plea. The trial court found that it had substantially complied with the Rule 402(a) admonishments. The trial court cited two reasons in the record to support its conclusion that the defendant was aware of the rights he was waiving by pleading guilty. First, the defendant had attended almost two years of community college, and second, the defendant "had seen jury trials on television." We agree with the argument advanced by the defense that these are assumptions with little support of actual awareness of the rights being waived. The trial court also stated that even though there had been no admonishments that the defendant did not have to plead guilty and that he had the right to confront witnesses, the defendant was aware of these rights. The court stated that the defendant was aware of these rights because the defendant had been arrested for misdemeanors and pled guilty to those charges (driving under the influence, driving while license suspended, and battery). From the presentence investigation report, these

22

misdemeanors occurred in 2011 in Escambia County, Florida. While the trial court found support in this 2011 plea, we note that there is no record of any admonishments that may or may not have been given to the defendant in Florida. We disagree that the defendant's 2011 plea provided him with an awareness and knowledge that he had the right to plead not guilty to first degree murder as well as the right to confront witnesses.

¶ 55    We find that the defendant's testimony at the motion hearing provides additional support that he did not understand the process and his rights if he had proceeded to trial. The defendant testified that he believed he had no witnesses and that there was "nothing" he could do. He presumed that the case would be based solely upon his word against that of his former girlfriend, Kristine Phillippe. He testified that he did not know until after he was sentenced that he would have had the right to call witnesses. When the State asked him if he understood that he did not have to plead guilty, the defendant responded that he did not have "much of a choice." He acknowledged that he could have decided not to plead guilty but stated that he "didn't know what the ramifications would be."

¶ 56    Having reviewed the Rule 402(a) admonishments provided by the trial court to the defendant at his plea hearing, and after considering the entirety of the record on appeal, we conclude that the trial court did not substantially comply with the Illinois Supreme Court's prescribed requirements. We find that the admonishments provided in this case did not affirmatively establish "that the defendant voluntarily and understandingly entered his plea of guilty." Ill. S. Ct. R. 402, Committee Comments (rev. May 20, 1997) (citing *Boykin*, 395 U.S. 238). For these reasons, we also conclude that the defendant's due process rights were violated and, thus, he was prejudiced by the inadequate admonishments. *Dougherty*, 394 Ill. App. 3d at 139 (citing *Davis*, 145 Ill. 2d at 244).

23

¶ 57    The trial court's decision to deny the defendant's motion to withdraw his guilty plea constituted an abuse of discretion. *Delvillar*, 235 Ill. 2d at 519 (citing *Walston*, 38 Ill. 2d at 42); *Hale*, 82 Ill. 2d at 175-76. "Leave to withdraw a guilty plea is granted not as a matter of right, but only as required to correct a manifest injustice under the facts involved." *People v. Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22. We find that this case meets this standard. Accordingly, we reverse the trial court's order denying the defendant's motion to withdraw his guilty plea and remand the case back to the trial court. On remand, the defendant shall be allowed to withdraw his plea, and can choose to plead again or to exercise his right to a trial.

¶ 58    Because we are reversing this case to allow the defendant to withdraw his plea, we do not reach the defendant's other argument—that his defense attorney provided him with ineffective assistance. However, statements made by the trial court about the efficacy of the assistance the defendant received from his defense attorney require our brief attention. At the conclusion of the hearing on the defendant's motion to withdraw his guilty plea, the trial court stated its belief that counsel had "likely represented over one thousand clients before this court" during her public defender career. The court further remarked that it did not believe that counsel would have "neglected to work up [the defendant's] case for a jury trial had he informed her that was not guilty and wished to have a trial." With these statements, the trial court appears to base its determination that counsel provided the defendant with effective assistance on its knowledge of other cases involving the same attorney. Instead, the trial court should have focused on the representation provided in this case and considered counsel's testimony about her representation. There is a presumption that a trial court only considers competent evidence, but the presumption may be rebutted if the record provides contrary affirmative support. *People v. Barham*, 337 Ill. App. 3d 1121, 1135 (2003) (citing *People v. Wallenberg*, 24 Ill. 2d 350 (1962)). "Due process does not

permit [the trial court] to go outside the record, except for matters of which a court may take judicial notice." *People v. Yarbrough*, 93 Ill. 2d 421, 429 (1982). The trial court clearly considered his experience in presiding over cases in which this defense attorney represented other defendants to be important and worthy of consideration. As consideration of matters outside of this record was not an appropriate exercise of judicial notice, on remand, we direct the circuit court to assign this case to a different judge for further proceedings consistent with this order.

¶ 59                                    III. Conclusion

¶ 60    For the above reasons, we reverse the judgment of the Crawford County circuit court and remand to allow the defendant to withdraw his guilty plea. On remand, we direct the circuit court to reassign this case to a different judge.

¶ 61    Reversed and remanded with directions.